**SCORE LLC and Shawna Siegfried, Plaintiffs,**

v.

**CITY OF SHORELINE, Defendant.**

**No. C03–2391Z.**

United States District Court, W.D. Washington, at Seattle.

May 10, 2004.

---

Gilbert Henry Levy, Gilbert H Levy, Seattle, WA, for Score LLC, Shawna Siegfried, Plaintiffs.

Jayne Lyn Freeman, Shannon M. Ragonesi, Keating Bucklin & McCormack, Seattle, WA, Michael R Kenyon, Kenyon Disend, Issaquah, WA, for Shoreline City of, a Municipal Corporation, Defendant.

## ORDER

ZILLY, District Judge.

Plaintiff, SCORE LLC (hereinafter "Plaintiff") brings this action against the City of Shoreline (hereinafter "the City") alleging that various sections of the Shoreline Municipal Code (hereinafter "SMC") relating to the regulation of adult cabarets, violate the First and Fourteenth Amendments to the Federal Constitution and Article 1, Section 5 of the Washington Constitution. Pl's Mot. for Sum. J., docket no. 18, p. 1–2. Plaintiff now moves for summary judgment, docket no. 18, seeking an order declaring certain provisions of the SMC unconstitutional and an injunction restraining the City from enforcing the challenged provisions of the SMC. Pl's Compl., docket no. 13, ¶¶ 8.1–.2; see also Pl's Reply, docket no. 24, p. 1. The City cross-moves for summary judgment, docket no. 21, seeking an order dismissing Plaintiff's claims with prejudice. Def's Opp'n, docket no. 21, p. 2. For the reasons stated below, the Court GRANTS in part and DENIES in part the underlying motions for summary judgment, docket nos. 18 and 21.

### BACKGROUND

Plaintiff SCORE LLC operates an adult nightclub known as "Sugars" in the City of Shoreline. Pl's Compl., docket no. 13, ¶ 1.1. Plaintiff holds an adult cabaret license issued pursuant to Chapter 5.10 of the SMC. Id. Under Chapter 5.10 of the SMC, a business falling within the definition of an "adult cabaret" is required to

obtain an adult cabaret license and to comply with various other sections of the SMC applicable to such a business. *See* SMC § 5.10. The City's ordinance related to the regulation and licensing of adult cabarets was first enacted by Ordinance No. 139 and was adopted by the City on October 13, 1997. Mattioli Decl., docket no. 23, Ex. 2. This law was later amended by Ordinance No. 318 amending Chapter 5.10 in February 2003 and Ordinance No. 332 further amending Chapter 5.10 in July 2003. *Id.* at Ex. 5, 8.

On June 17, 2002, the City issued a notice and order suspending Plaintiff's adult cabaret license for a period of thirty days, for a number of violations of Ordinance No. 139, including the ban on "simulated sexual conduct." Mattioli Decl., docket no. 23, Ex. 10. Plaintiff appealed that decision to the Hearing Examiner and the license suspension was upheld. Plaintiff then filed a writ of review to the King County Superior Court in *Score LLC v. City of Shoreline and Shoreline Hearing Examiner,* Cause No. 02–2–30555–5 SEA. The King County Superior Court has since affirmed the decision of the Shoreline Hearing Examiner. Supp. Freeman Decl., docket no. 29, Ex. 1 (Court's Finding issued on March 29, 2004).

While the license suspension was pending on review, the Shoreline City Council enacted Ordinance No. 318, which amended SMC 5.10. Mattioli Decl., docket no. 23, Ex. 5 (enacted in February 2003). Thereafter, Plaintiff filed the present action against the City in King County Superior Court, alleging that portions of SMC 5.10, as amended, were unconstitutional under Federal and Washington Constitutions. Freeman Decl., docket no. 22, Ex. 1 (complaint filed March 5, 2003). After the suit was filed, Plaintiff moved for a preliminary injunction against the enforcement of certain provisions of SMC 5.10, as amended by Ordinance No. 318. *See* Levy Decl.,

docket no. 19, ¶ 5. Plaintiff also moved to amend its complaint to add a claim for a violation of the Federal Civil Rights Act, 42 U.S.C. § 1983. *Id.*

On June 18, 2003, the King County Superior Court issued a preliminary injunction against enforcement of the requirement that managers and entertainers obtain a fingerprint identification card as a condition for applying for a license under SMC § 5.10.040. Notice of Removal, docket no. 1. On June 20, 2003, the King County Superior Court issued an order permitting Plaintiff to file an amended complaint. *Id.* Thereafter, Plaintiff filed its amended complaint and the City removed the action to this Court.

On July 21, 2003, the Shoreline City Council enacted Ordinance No. 332, which further amends SMC 5.10. Mattioli Decl., docket no. 23, Ex. 8.

Plaintiff now challenges the constitutionality of certain provisions of Chapter 5.10, as currently enacted, including the amendments made by Ordinance No. 332. *See* Levy Decl., docket no. 19, ¶ 6. First, Plaintiff alleges that SMC § 5.10.040(A)(7), which governs the issuance and renewal of an adult cabaret license, violates the First and Fourteenth Amendments of the Federal Constitution and Article 1, Section 5 of the Washington Constitution, because it fails to contain adequate time limits, fails to preserve the status quo if the City clerk fails to act in a timely manner on a license renewal application, and fails to provide for reasonably prompt judicial review. Pl's Mot. for Sum. J., docket no. 18, p. 1. Second, Plaintiff alleges that SMC § 5.10.070(A)(5), which imposes an absolute ban on "simulated sexual conduct," is overly broad and violates the First and Fourteenth Amendments to the Federal Constitution, and Article 1, Section 5 of the Washington Constitution. *Id.* at p. 2. Fi-

nally, Plaintiff alleges that SMC § 5.10.070(C)(1), which holds the adult cabaret operator criminally and civilly liable, is in violation of the First and Fourteenth Amendments of the Federal Constitution. *Id.* at p. 3.

Plaintiff's motion seeks an order of this Court declaring the above referenced provisions of the SMC unconstitutional. Pl's Mot. for Sum. J., docket no. 18, p. 23. The City filed a cross-motion for summary judgment seeking dismissal of Plaintiff's complaint. Def's Opp'n, docket no. 21, p. 1.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991). For purposes of the motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000).

 As to the level of protection given to nude dancing, five members of the Supreme Court have agreed that nude dancing is expressive conduct protected by the First Amendment, albeit only at the "outer ambit" of the Amendment's protection. *See City of Erie v. Pap's A.M.,* 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Regulations upon nude dancing are analyzed as time, place, and manner restrictions and do not violate the First Amendment if they pass the test approved by *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *Pap's A.M.,* 529 U.S. at 289, 120 S.Ct. 1382. Under the *O'Brien* test, a regulation on nude dancing is sufficiently justified if: (a) there is a substantial government interest; (b) the regulation furthers that government interest; (c) the interest is unrelated to the suppression of free expression; and (d) the restriction is no greater than is essential to the furtherance of the government interest. *Pap's A.M.,* 529 U.S. at 296–302, 120 S.Ct. 1382; *see United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

### II. Facial and As–Applied Constitutional Challenges

" 'A successful challenge to the facial constitutionality of a law invalidates the law itself.' " *4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111 (9th Cir. 1999) (quoting *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998)). Thus, "facial challenges 'are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court.' " *Convoy,* 183 F.3d at 1111 (quoting *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)). A plaintiff may also challenge the constitutionality of a statute "as-applied" to their particular activity. An "as-applied" challenge "contends that the law is unconstitutional as applied to the plaintiff's particular expressive activity, even though the law may be capable of valid application to others."

*Convoy*, 183 F.3d at 1111 n. 3. "Thus, a successful 'as-applied' challenge does not invalidate the law itself, but only the particular application of that law." *Id.* In the present case, Plaintiff seeks to invalidate the operator licensing, "simulated sexual conduct," and operator liability provisions of the City's ordinance through a facial challenge.[1]

### III. Standing

■ Regardless of whether a plaintiff raises a facial challenge or an "as-applied" challenge, the plaintiff must still demonstrate standing to bring an action in federal court.[2] Article III standing contains three elements: (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) likelihood that the injury will be " 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The first element of the standing inquiry, injury in fact, requires "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* at 560, 112 S.Ct. 2130 (citations omitted). A plaintiff must show that " 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.' " *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111–12 (9th Cir.1999). Thus, a " 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal

rights or interest of third parties.' " *Id.* (quoting *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)).

■ However, "under the Supreme Court's 'overbreadth' doctrine, a plaintiff may challenge an overly broad statute or regulation by showing that it may inhibit the First Amendment rights of individuals who are not before the court." *Convoy*, 183 F.3d at 1112 (citing *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798–99, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Under the overbreadth doctrine, "the plaintiff can challenge a statute on the ground that it is unconstitutional as applied to someone else, even if his own conduct is not protected under the First Amendment." *Convoy*, 183 F.3d at 1112 (citing *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)). The overbreadth doctrine arises when "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). The doctrine "serves to overcome what would otherwise be a plaintiff's lack of standing." *Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir.1997).

■ According to the Supreme Court, the crucial issues in determining overbreadth standing "are whether [the plaintiff] satisfies the requirement of 'injury-in-

---

1. "Facial challenges under the First Amendment are permitted 'when the legislation allegedly vests government officials with unbridled discretion' and 'when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech.' " *Convoy*, 183 F.3d at 1111 (quoting *Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir.1998)).

2. The City frames this issue as whether an actual "case-or-controversy" exists under Article III of the U.S. Constitution. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In this case, if Plaintiff can establish standing to sue under a particular ordinance, it has satisfied the "case-or-controversy" requirement. *See, e.g., id.*

fact,' and whether it can be expected satisfactorily to frame the issues in the case." *Munson*, 467 U.S. at 958, 104 S.Ct. 2839. The burden to establish standing rests on the party invoking federal jurisdiction and is to be determined by the facts that exist at the time the complaint is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 569 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because a plaintiff "may have standing to challenge some provisions of a law but not others," *Convoy*, 183 F.3d at 1112, the Court must determine Plaintiff's standing to challenge each of the challenged provisions of the SMC.

### A. Adult Cabaret Operator License

■ Plaintiff argues that it has standing to challenge the City's ordinance applying to operator licensing because it presently holds an adult cabaret operator license, it must seek renewal of its license on an annual basis, and it intends to renew its license for next year.[3] Pl's Mot. for Sum. J., docket no. 18, p. 5. Plaintiff also argues that the licensing renewal procedures vest unbridled discretion in the City clerk to accept or reject an operator license application. In doing so, Plaintiff argues that the present case is distinguishable from *Convoy*, where the Ninth Circuit held that the plaintiff lacked standing to challenge the licensing provisions of the city code at issue. In *Convoy*, the court held that,

> [w]ith regard to the licensing provisions, Convoy cannot satisfy the "injury-in-fact" requirement. It is undisputed that Convoy already has a license, which was issued by the City in 1987. Moreover, Convoy cannot assert that it will ever again be subject to the licensing provisions, because it has never indicated that it intends to pursue another license.

*Convoy*, 183 F.3d at 1112–13. Plaintiff argues that the present case is distinguishable from Convoy because it "intends to seek renewal [of its adult operator license] when its current license expires." Pl's Mot. for Sum. J., docket no. 18, p. 5. Thus, unlike the plaintiff in *Convoy*, who indicated that it did not intend to pursue another license, Plaintiff SCORE will again be subject to the licensing provision that it is seeking to challenge in this case.

A plaintiff may bring an action challenging the criteria for renewals of adult entertainment licenses, without first applying for the license and being denied. *See, e.g.*, *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 413–14 (6th Cir.1997) (cited with approval by *Clark v. City of Lakewood*, 259 F.3d 996, 1008–9 (9th Cir.2001)). In *DLS*, the court stated that "although all of the plaintiffs currently possess valid permits, each plaintiff must apply annually for renewal . . . , and are also subject to possible revocation proceedings" under the ordinance. 107 F.3d at 414. Thus, the court reasoned that the plaintiffs had standing to challenge the renewal provisions of the ordinance. *Id.*

In the present case, Plaintiff has standing to challenge the license renewal provisions of the SMC for its adult cabaret operator license. Plaintiff is a party that is subject to the requirements of the City's licensing procedures. Plaintiff intends to seek renewal of its annual license when it expires, and will thus be subject to the renewal procedures of the SMC. Finally, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *See, e.g.*, *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1107 (9th Cir.2003) (quoting *City of Lakewood v.*

---

**3.** Renewals of operator licenses and issuances of licenses for the first time are treated the same under SMC § 5.10.040(A). *See* SMC § 5.10.080(A)-(B).

*Plain Dealer Pub. Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)).

## B. Simulated Sexual Conduct

■ Plaintiff also challenges the City's ordinance that prohibits an employee or entertainer at an adult cabaret from engaging in "simulated sexual conduct." Plaintiff alleges that the provision of the ordinance pertaining to "simulated sexual conduct" is unconstitutional because it is overbroad, vague, and constitutes an impermissible prior restraint. Pl's Mot. for Sum. J., docket no. 18, p. 5. Specifically, Plaintiff argues that the ordinance is unconstitutional because it prohibits all "simulated sexual conduct" regardless of whether that conduct is obscene.[4] *Id.* at p. 2. Plaintiff argues that it has standing to challenge the "simulated sexual conduct" provision of the ordinance because "[t]he City has previously brought license suspension proceedings against Plaintiff SCORE for violating similar but not identical restrictions and there is reason to believe that it may seek to do so again." *Id.* at p. 6.[5]

Although the challenged ordinance restricts the expression of entertainers or employees of the adult cabaret only, an operator may still challenge the ordinance at issue under the overbreadth doctrine on the ground that the ordinance is unconstitutional as to entertainers and employees, even if the operator's own conduct is not protected under the First Amendment. *See Convoy*, 183 F.3d at 1112. However,

an operator still must show that it has suffered an injury in fact and an ability to satisfactorily frame the issues in the case. *See Clark v. City of Lakewood*, 259 F.3d 996, 1010–11 (9th Cir.2001). In *Clark*, the issue was whether an adult cabaret operator could challenge the licensing provisions applicable to managers and entertainers. *Id.* at 1009–11. In that case, the court stated that because of the licensing provisions applicable to managers and entertainers in Lakewood, there was a risk that the cabaret employees would avoid participating in the alleged protective activity in Lakewood entirely, and without licensed employees the owner could not operate his business. *Id.* at 1011. Thus, the court held that the operator had stated an injury in fact because there was a "credible risk the Ordinance could cause self-censorship and chilling of expression." *Id.* at 1010.

Similarly, the Plaintiff in the present case, as an operator, faces the risk that its employees and entertainers will engage in self-censorship or avoid participating in the alleged protected activity in Shoreline. Without employees and entertainers, Plaintiff cannot conduct its business. Plaintiff can also satisfactorily frame the issue in this case. Plaintiff has a vested interest in challenging the ordinance because it has been cited for violations in the past. *See* Mattioli Decl., docket no. 23, Ex. 10; *see also Clark*, 259 F.3d at 1011 (holding that plaintiff had framed issue for the purposes of standing because, inter

---

4. The ordinance at issue provides that "No employee or entertainer shall perform actual or simulated acts of sexual conduct as defined in this chapter, or any act, which constitutes a violation of Chapter 7.49A RCW, the Washington Moral Nuisances Statute." SMC § 5.10.070(5). The definition of "sexual conduct," as listed below in IV.B., does not contain an exemption for conduct that is not obscene. *See* SMC § 5.10.010(M). A violation of this section is a misdemeanor under SMC § 5.10.110, and provides a basis for

license suspension under SMC § 5.10.090(A). An adult cabaret operator can also have his/her license revoked or suspended if an entertainer or employee engages in acts of "simulated sexual conduct." SMC § 5.10.070(C)(1).

5. Plaintiff was in fact cited for violations of the "sexual conduct" ordinance when the City suspended its license in June, 2001. Mattioli Decl., docket no. 23, Ex. 10.

alia, he had a vested interest in the outcome). Additionally, Plaintiff has framed the issue of whether an ordinance is constitutional on its face if it could be applied to nonobscene expression. The Court concludes that Plaintiff has articulated a sufficient basis to allow Plaintiff to bring a facial overbreadth challenge to the "simulated sexual conduct" portion of the ordinance on behalf of entertainers and employees. *See Clark*, 259 F.3d at 1009.[6]

### C. Adult Cabaret Operator Liability

■ Plaintiff also challenges SMC § 5.10.070(C)(1), which provides that a "[f]ailure to take reasonable measures to promptly correct violations which were known or should have been known to the operator shall be grounds for suspension or revocation of the adult cabaret operator's license or other penalties provided in this chapter." *Id.* Plaintiff argues that the "should have known" standard is "tantamount to making the Adult Cabaret License holder strictly liable for the conduct of the entertainers and is therefore, an impermissible prior restraint." Pl's Mot. for Sum. J., docket no. 18, p. 17. Plaintiff also argues that the ordinance is overbroad and vague. *Id.* at 5.

Plaintiff argues that it has standing to challenge the SMC § 5.10.070(C)(1) because the City "has previously brought license suspension proceedings against Plaintiff SCORE for violating similar but not identical restrictions and there is reason to believe that it may seek to do so again." Pl's Mot. for Sum. J., docket no. 18, p. 6. Plaintiff contends that "[t]his constitutes a specific threat of future harm sufficient to satisfy the injury-in-fact requirement of *Convoy*" with respect to SMC § 5.10.070(C)(1). *Id.*

In *Convoy*, the plaintiff, Convoy, filed suit in federal district court to enjoin the city defendant from suspending its license under the existing administrative scheme. 183 F.3d at 1110. Convoy specifically challenged those portions of the city's code for which it was being accused of violating and that provided the basis for its license suspension. *Id.* at 1110–11. The court held that Convoy could satisfy the injury in fact requirement with regard to "revocation and suspension procedures employed by the [c]ity in suspending Convoy's license." *Id.* at 1113.

Plaintiff's reliance on *Convoy* is misplaced. Unlike the plaintiff in *Convoy*, who specifically challenged those provisions it was accused of violating, Plaintiff SCORE does not argue that the City has ever suspended its license based on the operator liability provision. Pl's Mot. for Sum. J., docket no. 18, p. 6 (stating that City has brought license suspension proceedings against Plaintiff for "*similar but not identical* restrictions." (Emphasis added)). The only notice of license suspension on record is that provided by the City, which cites Plaintiff for various violations and was issued on June 17, 2001. Mattioli Decl., docket no. 23, Ex. 10. However, that notice of license suspension does not cite Plaintiff for a violation of SMC § 5.10.070(C)(1). *Id.* Plaintiff has failed to establish that the City has ever sought operator liability against it, under SMC § 5.10.070(C)(1).

Plaintiff's only other argument is that it has "reason to believe" the City may seek penalties based on the operator liability provision in the future. Pl's Mot. for Sum. J., docket no. 18, p. 6. However, a plaintiff's subjective fears are not sufficient to establish standing. *See Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Thus, Plaintiff lacks standing to challenge the adult cabaret

---

6. *See also Deja Vu, Inc. v. Spokane County*, 46 F.Supp.2d 1083, 1089–92 (E.D.Wash.1998)

(allowing plaintiff to challenge the constitutionality of "sexual conduct" ordinance).

operator liability provision of the ordinance.[7]

## IV. First Amendment Challenges

### A. Adult Cabaret Operator License

■ Plaintiff argues that the adult cabaret operator license provision is unconstitutional because it is an impermissible prior restraint and vests unbridled discretion in the City clerk to issue or deny issuance of an operator license. Pl's Mot. for Sum. J., docket no. 18, p. 6. A licensing scheme regulating nude dancing is considered a prior restraint because the enjoyment of the protected expression is contingent upon the approval of government officials. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223–24, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). While prior restraints are not unconstitutional per se, any system of prior restraint comes to the courts bearing a heavy presumption against constitutional validity. *Id.* at 225, 110 S.Ct. 596. However, prior restraints can be imposed only if they are reasonable time, place, and manner restrictions. *United States v. Baugh,* 187 F.3d 1037, 1042 (9th Cir.1999). In addition, an adult entertainment licensing scheme must contain at least two procedural safeguards. *Clark v. City of Lakewood,* 259 F.3d 996, 1005 (9th Cir.2001). First, a decision to issue or deny a license must be made within a brief, specified, and reasonably prompt period of time during which the status quo is maintained. *Id.* (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 228, 110 S.Ct. 596, 107 L.Ed.2d 603). Second, there must be prompt judicial review in the event a license is denied. *Clark,*

259 F.3d at 1005 (citing *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596).

■ Plaintiff focuses its argument on the alleged lack of procedural safeguards in the renewal procedures for operator licenses. The specific provision that Plaintiff challenges was enacted by the Shoreline City Council pursuant to Ordinance No. 318. *See* Mattioli Decl., docket no. 23, Ex. 5, p. 7. The provision, as it is currently enacted, states as follows:

> An adult cabaret operator's license shall be issued or the application denied by the clerk within 14 days of the date of filing a complete license application and fee, *unless the clerk determines that the applicant has failed to meet any of the requirements of this chapter or provide any information required under this subsection, or that the applicant has made a false, misleading or fraudulent statement of material fact on the application for a license.* Upon request of the applicant, the clerk shall grant an extension of time, up to but not to exceed 20 additional days, in which to provide all information required for license application. The time period for granting or denying a permit shall be stayed during the period in which the applicant is allowed an opportunity to properly complete the application. If the clerk finds that the applicant has failed to meet any of the requirements for issuance of an adult cabaret operator's license, the clerk shall issue a notice of nonissuance in writing, and shall cite the specific reasons therefor.

SMC § 5.10.040(A)(7) (emphasis added).[8] Plaintiff argues that under this section of

---

**7.** Because the Court concludes that Plaintiff lacks standing, the Court need not address the City's arguments as to whether the findings of the King County Superior Court in *Score LLC v. City of Shoreline and Shoreline Hearing Examiner,* Cause No. 02–2–30555–5 SEA, collaterally estop Plaintiff's challenge to the op-

erator liability ordinance. *See* Def's Reply, docket no. 28, p. 4.

**8.** Plaintiff takes issue with the emphasized portion of the licensing ordinance. Pl's Mot. for Sum. J., docket no. 18, p. 6.

the SMC, the clerk is not under a duty to issue or deny a license, or act on a license renewal application within fourteen days, if the clerk determines: (1) that the applicant has failed to "meet any of the requirements of this chapter"; or (2) that the license application is incomplete; or (3) the applicant has made a material false statement in the license application. Pl's Mot. for Sum. J., docket no. 18, p. 7. Plaintiff contends that if the clerk determines that any of the three conditions occurs, the clerk is not obligated to act on the license application in a timely manner and may simply refrain from taking action while the business is indefinitely closed, as it would be without an operating license. *Id.*

The triggering event for the filing of an appeal of a clerk's action is after "issuance and mailing of the action" by the clerk.[9] Plaintiff argues that "if the clerk fails to issue a notice of action, there is nothing from which to appeal. If there is no appeal, there can be no administrative stay. This enables the clerk to affect the indefinite closure of the business by simply failing to act." *Id.* The City responds by arguing that SMC § 5.10.040(A)(7) mandates that the clerk issue or renew a license within fourteen days after an application is made. Def's Opp'n, docket no. 21, p. 9. The City also asserts that the right to immediate review occurs at the moment there is a refusal to "issue or renew any license," regardless of whether the license renewal has been denied or if the clerk fails to act on the license application. *Id.* at 11. While this may be how the City intends to apply SMC § 5.10.040(A)(7), it is not how this Court reads the ordinance.

Under the plain language of the ordinance, the clerk is under no obligation to issue or deny an application for an operator's license. As stated by the Plaintiff, if the clerk concludes that one of the three pre-conditions is met in the "unless clause," the clerk is not obligated within any period of time to issue or deny the application. Although the clerk "shall" issue a notice of non-issuance in writing if the clerk finds that the applicant has failed to meet any of the requirements for issuance of the license, there is no time period in which the clerk must issue the notice. *See* SMC § 5.10.040(A)(7). Without a notice of non-issuance, the applicant does not yet have a right to appeal under SMC § 5.10.060(A). If the applicant does not have a right to appeal, then it cannot stay the action of the clerk. *Id.* § 5.10.060(A). As stated by the court in *Convoy*, the key inquiry in the procedural safeguard analysis of a licensing provision is whether the ordinance preserves the status quo while the applicant goes through the administrative appeal process. 183 F.3d at 1114. The operator licensing provision fails to preserve the status quo because the clerk is not required to take any action on an application, and thus the applicant cannot file an appeal that would result in a stay of the clerk's action or inaction. The basis for the procedural safeguards is the danger of "undue delay" which "compels the speaker's silence," and "results in the unconstitutional suppression of protected speech." *FW/PBS*, 493 U.S. at 226, 110 S.Ct. 596. The City's licensing scheme fails to provide adequate procedural safeguards. Therefore, the Court concludes

9. The ordinance dealing with the process of filing an appeal provides:

Any person aggrieved by the action of the clerk in refusing to issue or renew any license under this chapter or in temporarily suspending or permanently revoking any license under this chapter shall have the right to appeal such action to the City hearing examiner, *by filing an appeal statement with the clerk within 14 days of issuance and mailing notice of the action from which the appeal is taken.* The filing of such appeal shall stay the action of the clerk.
SMC § 5.10.060(A) (emphasis added).

that the adult cabaret operator licensing ordinance, SMC § 5.10.040(A)(7), violates the First Amendment of the Federal Constitution.

## B. Simulated Sexual Conduct

■ Plaintiff argues that the City's ordinance that restricts "simulated sexual conduct" in adult cabarets is overbroad because the ordinance does not provide an exemption for "simulated sexual conduct" that is not obscene. Pl's Mot. for Sum. J., docket no. 18, p. 11–12. The provision of the ordinance at issue provides that:

> No employee or entertainer shall perform actual or simulated acts of sexual conduct as defined in this chapter, or any act, which constitutes a violation of Chapter 7.49A RCW, the Washington Moral Nuisance Statute.

SMC § 5.10.070(A)(5).[10] A violation of this section is a misdemeanor under SMC § 5.10.110 and provides a basis for license suspension under SMC § 5.10.090(A). Although the "simulated sexual conduct" provision does not provide an exemption for nonobscene expression, the City argues that the ordinance does have such an exemption in its definition of "adult entertainment." The definition of "adult entertainment" provides that "Adult entertainment means any exhibition, performance, or dance *which is not obscene.*" SMC

§ 5.10.010(B) (Emphasis added). However, SMC § 5.10.070(A)(5), the "simulated sexual conduct" provision, applies to any "employee or entertainer." An "entertainer" is defined as "any person who provides adult entertainment within an adult cabaret." SMC § 5.10.010(F). Thus, the provision regulating "simulated sexual conduct" is necessarily regulating conduct that is not obscene, because it regulates the conduct of entertainers who provide nonobscene adult entertainment.[11]

The City argues that a number of other courts have addressed similar prohibitions on sexual conduct and held that the prohibition was not facially unconstitutional. In support of its argument, the City relies upon *Ino Ino, Inc. v. City of Bellevue,* 132 Wash.2d 103, 937 P.2d 154 (1997) and *Deja Vu v. Spokane County,* 46 F.Supp.2d 1083 (E.D.Wash.1998). Both *Ino Ino* and *Deja Vu* involved challenges to identical prohibitions on "sexual conduct" as at issue in the present case. *Ino Ino,* 132 Wash.2d at 137 n. 12, 937 P.2d 154; *Deja Vu,* 46 F.Supp.2d at 1090–91. However, in both of those cases, there was an exemption in the ordinances for conduct that is not obscene. *Ino Ino,* 132 Wash.2d at 137 n. 13, 937 P.2d 154 (The ordinance provided that "This chapter shall not be construed to prohibit: ... 3. Exhibitions, performances,

---

**10.** Pursuant to the definitions section of SMC Ch. 5.10, "sexual conduct" means any act or acts of:

1. Sexual intercourse within its ordinary meaning, occurring upon any penetration, however slight; or

2. Any penetration of the vagina or anus, however slight, by an object; or

3. Any contact between persons involving the sex organs, whether clothed or unclothed, of one person and the mouth or anus, whether clothed or unclothed, of another; or

4. Masturbation, manual or instrumental, of oneself or of one person by another; or

5. Touching of the sex organs or anus, whether clothed or unclothed, of oneself or of one person by another.
SMC § 5.10.010(M).

**11.** While the first four types of conduct defined as "sexual conduct" in SMC § 5.10.010(M) and prohibited by SMC § 5.10.070(A)(5) could likely not be performed in public without being deemed obscene, the fifth prohibited conduct could be performed in a nonobscene manner. *See* SMC § 5.10.010(M); *see also Deja Vu v. Spokane County,* 46 F.Supp.2d at 1090 (stating that "touching oneself or another with or without clothing" could be performed in a nonobscene manner).

expressions or dances that are not obscene."); *Deja Vu*, 46 F.Supp.2d at 1089 (same). In contrast to both *Ino Ino* and *Deja Vu*, the ordinance at issue in the present case does not contain such an exemption for nonobscene expression.

Although the exemption in the ordinance in *Deja Vu* went on to provide that the exemption did not "apply to sexual conduct defined in Section IV," the ordinance is nonetheless distinguishable from that in the present case. In *Deja Vu*, because the ordinance had an exemption for nonobscene expression, the court was able to construe the "dramatic works exemption carve-out to apply only to pure conduct without expressive value and to obscene expression." 46 F.Supp.2d at 1091. However, the ordinance at issue in this case is not capable of such a construction because there is no exemption for nonobscene expression at all in the ordinance. The original Ordinance No. 139 had an exemption for nonobscene expression, but it was removed when the Shoreline City Council enacted Ordinance No. 318. Mattioli Decl., docket no. 23, Ex. 5, p. 15. Without such an exemption, the prohibition on "sexual conduct" necessarily results in a complete ban on certain nonobscene expression.

As a number of courts have recognized, governments cannot ban absolutely a protected form of expression. *See Schultz v. City of Cumberland*, 228 F.3d 831, 848 (7th Cir.2000); *Brownell v. City of Rochester*, 190 F.Supp.2d 472, 487 (W.D.N.Y.2001); *see also BSA, Inc. v. King County*, 804 F.2d 1104, 1110 (9th Cir.1986) (Government cannot regulate the content of nonobscene expression when viewed only by consenting adults). In *Schultz*, the ordinance banned "specified sexual activities," which were defined as "the fondling or erotic touching of human genitals, pubic region..." *Id.* at 846 (citing Section III(A) of the city's ordinance). The court held that

by restricting the particular movements and gestures of the erotic dancer, the ordinance unconstitutionally burdened expression. *Id.* at 847. The court stated that none of the Supreme Court precedent permits a government's restriction on nonobscene adult entertainment. *Id.* at 848. In *Brownell*, the issue was whether an ordinance banning "actual or simulated sexual intercourse...whether clothed or unclothed" was constitutional. 190 F.Supp.2d at 478. The court stated, "[s]o long as it is not obscene, however, expressive conduct may not be regulated solely on the basis of its content." *Id.* at 488. Having found that the restriction was aimed at the expressive nature of the conduct, the court concluded that, "there is no basis upon which to believe that the restrictions will in fact further important or substantial governmental interest asserted here, i.e., the curbing of adverse secondary effects, and even if it did, these restrictions fail to comply with O'Brien's mandate that 'the incidental restrictions on the alleged First Amendment freedoms [be] no greater than essential to the furtherance of that interest.'" *Id.* (citing *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673).

Under *O'Brien*, an ordinance that burdens nonobscene expression is valid if: (a) there is a substantial government interest; (b) the regulation furthers that government interest; (c) the interest is unrelated to the suppression of free expression; and (d) the restriction is no greater than is essential to the furtherance of the government interest. *See United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In this case, there is no dispute that there is a substantial governmental interest in the City of Shoreline's regulations of adult cabarets. However, the interest must be unrelated to the suppression of free expression and the restriction must be no greater than is essential to the furtherance of that inter-

est. The ordinance at issue does not simply require some minimal amount of clothing, see *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) ("pasties" and "g-strings" restriction was not unconstitutional), nor does it focus on the distance between entertainer and the patron, see *Ino Ino, Inc. v. City of Bellevue*, 132 Wash.2d 103, 126, 937 P.2d 154 (1997) (four-foot rules "do not ban expression but impose temporal or geographic limitations as time, place, or manner restrictions."). The ordinance directly restricts the manner in which the dancers perform and the message that they convey. The court's reasoning in *Schultz* is instructive on this issue,

> By restricting the particular movements and gestures of the erotic dancer...Section VIII(A) of the Ordinance unconstitutionally burdens protected expression. The dominant theme of nude dance is "an emotional one; it is one of eroticism and sensuality." [citation omitted]. Section VIII(A) deprives the performer of a repertoire of expressive elements with which to craft an erotic, sensual performance and thereby interferes substantially with the dancer's ability to communicate her erotic message.... "Because this speech is not obscene, the government may not simply proscribe it." [citation omitted]

228 F.3d at 847.

Similarly, the ordinance in the present case deprives dancers of nonobscene forms of expression. Although the City may have a substantial interest in curtailing the secondary effects of nude dancing, the "simulated sexual conduct" provision of the ordinance sweeps under its prohibition constitutionally protected nonobscene forms of expression. Therefore, the ordinance is unconstitutional on its face and must be amended to exempt nonobscene forms of expression.

### CONCLUSION

For the foregoing reasons, the following provisions of the City's laws are unconstitutional: (1) SMC § 5.10.040(A)(7), the provision relating to the licensing of adult cabaret operators; and (2) SMC § 5.10.070(A)(5), in so far as it prohibits nonobscene forms of expression. The City is prohibited from enforcing these provisions as currently enacted. Plaintiff is directed to serve and file a proposed injunction consistent with the Court's ruling, by May 21, 2004. The City may file any objection to the injunction by June 4, 2004. As to Plaintiff's challenge to the adult cabaret operator liability ordinance, Plaintiff lacks standing to challenge that provision. Finally, because the Court has concluded that the two provisions of the SMC, as stated above, are unconstitutional under the Federal Constitution, the Court need not address Plaintiff's challenge under Washington's Constitution. The underlying motions for summary judgment, docket nos. 18 and 21, are GRANTED in part and DENIED in part.

IT IS SO ORDERED.