RAMESES, INC., Plaintiff,

v.

COUNTY OF ORANGE, Defendant.

No. 6:04CV1824ORL28KRS.

United States District Court,
M.D. Florida.
Orlando Division.

April 3, 2007.

Order Denying Clarification April 6, 2007.

See, also, 2005 WL 2456203.

Steven Gerald Mason, Law Office of Steven G. Mason, Orlando, FL, for Plaintiff.

Linda Brehmer Lanosa, Orlando, FL, Gary M. Glassman, City of Tampa, Legal Department, Tampa, FL, for Defendant.

## AMENDED ORDER

ANTOON, District Judge.

Plaintiff Rameses, Inc., d/b/a Cleo's, operates an erotic dancing establishment in Orlando, Florida, licensed by Defendant, Orange County ("the County"). Plaintiff brought this action seeking declaratory and injunctive relief to prevent the County from enforcing certain provisions of its Adult Entertainment Code ("AEC").

This cause is before the Court on Defendant's Dispositive Motion for Final Summary Judgment (Doc. 53) and Memorandum of Law in support thereof (Doc. 66). Plaintiff has filed a Response in Opposition to Orange County's Motion for Summary Judgment. (Doc. 95.) In addition to asking that Defendant's motion be denied, Plaintiff asks that "relief [be] granted to the plaintiff." (*Id.* at 1.) The Court construes Plaintiff's Memorandum in Opposition as a cross-motion for summary judgment. *See United States v. M/V Jacquelyn L.,* 100 F.3d 1520, 1521–22 & n. 2 (11th Cir.1996); *Centerfolds v. Town of Berlin,* 352 F.Supp.2d 183, 186 (D.Conn. 2004). For the following reasons, Defendant's Motion for Summary Judgment is

granted in part and denied in part; Plaintiff's Cross–Motion for Summary Judgment is also granted in part and denied in part.

## I. Background

In 2004, members of the County's Metropolitan Bureau of Investigation ("MBI") arrested patrons and employees of Cleo's for criminal violations following an extensive undercover investigation called "Operation Overexposed." (First Am. Compl. ¶¶ 14, 21.) As a result of those arrests, Plaintiff anticipates that the County will suspend or revoke its adult entertainment license pursuant to the AEC's suspension and revocation provisions. (*Id.* ¶¶ 9, 14.) The County initiated suspension proceedings against Plaintiff in 2002 after a similar raid that resulted in the arrests of dancers. (*Id.* at 3–4.) As of yet, however, the County has neither taken action against Plaintiff's license nor expressed any intention of doing so.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. In this case, neither party alleges that there are any material facts in dispute and each claims that it is entitled to judgment as a matter of law.

## III. Claims

Plaintiff has raised facial and as-applied challenges [1] to certain criminal provisions of the AEC. Plaintiff challenges: (1) the third definition of "specified sexual activity," ("SSA"),[2] as prohibited by section 3–129(3); (2) section 3–129(6), which prohibits the simulation of SSA; and (3) section 3–129(9), which prohibits certain intentional contact between an adult entertainment establishment worker and a customer.

Plaintiff has also raised facial challenges [3] to certain suspension and revoca-

---

**1.** Defendant Orange County states that Plaintiff raises both types of challenges (Def.'s Trial Br., Doc. 113 at 1), though neither the First Amended Complaint nor the Cross–Motion for Summary Judgment articulates either type of challenge or any particular legal theory, for that matter. The closest semblances of an as-applied challenge lie in statements suggesting that two of the arrested dancers were engaged in constitutionally protected conduct (First Am. Compl. ¶¶ 27 & 28), and the statement

that one of the dancer's "conduct illustrates the unconstitutionality of" these sections (Doc. 95 at 8). Plaintiff's claims against the AEC's criminal provisions are consistent with facial constitutional challenges.

**2.** *See* AEC § 3–6.

**3.** It is unclear whether Plaintiff intends to raise an as-applied challenge to the licensing ordinances. The County contends that all of

tion provisions of the AEC. Specifically, Plaintiff contends that the AEC's suspension and revocation provisions violate the First, Fifth, and Fourteenth Amendments by: (1) allowing the County "to suspend an adult license based upon an alleged violation of the law (without conviction or any court review)"; (2) allowing the County "to suspend or revoke an adult entertainment license based upon the unilateral actions of an individual defendant who enters a plea of no contest," thereby imposing "a form of strict or vicarious liability upon the owner or holder of the adult entertainment license"; (3) failing to "provide any time table by which the [C]ounty ... must initiate and notify the holder of an adult entertainment license that it is seeking to suspend or revoke the license" following a violation; (4) allowing the County "to revoke an adult entertainment license based upon the conduct of an 'operator' ... without any specific showing of wrongdoing or culpable conduct on the part of the license holder" and without providing the license holder "reasonable notice or an opportunity ... to remedy the purported criminal conduct"; (5) allowing the County "to unilaterally select [ ]without any independent objective or neutral guidelines[ ] a hearing officer who will determine if a suspension or revocation shall be imposed"; and (6) shifting "the burden of proof to the owner of the establishment to establish that the conduct or acts which form the basis of the suspension or revocation contain a signifi-

cant expressive element." (First Am. Compl. ¶¶ 30–38.) [4]

### IV. Ripeness

The County argues that Plaintiff's claims are not ripe because no action has been taken against Plaintiff's license for violations stemming from the 2004 raid. Any threat of suspension is purely speculative, according to the County, in part because William Lutz, director of the MBI, has stated that the MBI lacks sufficient evidence to recommend suspension to the County. (Def.'s Mem. at 2; Lutz Dep. 8–9, Feb. 1, 2006.) Alternatively, the County claims that if even if there were a threat of suspension, Plaintiff is permitted to remain open for business pending administrative and judicial review of the decision. See AEC §§ 3–35(e) & 3–36(f). Thus, the County contends, no hardship will befall Plaintiff for currently withholding judicial consideration of these claims.

Arguing that the present controversy is ripe for consideration, Plaintiff relies on the fact that the challenged substantive criminal provisions chill the constitutionally protected expression of the Cleo's dancers. (First Am. Compl. ¶¶ 5, 24.) In addition, Plaintiff points out that a similar raid and accompanying arrests occurred in 2002, resulting in an unsuccessful attempt by the County to suspend Plaintiff's license. (Id. ¶¶ 8, 10, 11, 13.) Plaintiff expects the County to initiate similar suspen-

---

Plaintiff's as-applied challenges should be disregarded because the AEC has not been applied to Plaintiff yet in this case. (Def.'s Trial Br., Doc. 113 at 1.) Plaintiff must abide by the AEC's regulations through its operations and thus the AEC has, in a sense, been applied to Plaintiff by virtue of Plaintiff's maintaining a license and complying with the other regulations. Still, insofar as Plaintiff has attacked the constitutionality of the licensing provisions, some of the claims cannot be fleshed out without reference to specific facts. If Plaintiff intended to raise as-applied chal-

lenges to the licensing provisions, those claims are not sufficiently ripe for review.

**4.** Paragraph 33 of Plaintiff's First Amended Complaint attacks the constitutionality of section 3–36 of the AEC "in that it allows the [C]ounty or Tax Collector to revoke a license based upon so-called 'violations' (undefined) by workers—without conviction or court process." (First Am. Compl. ¶ 33.) This claim is duplicative of Plaintiff's other challenges to the suspension and revocation provisions; it will not be addressed separately.

sion proceedings following the more recent arrests but believes that this suit has caused the delay. (*Id.* ¶ 22.) Plaintiff relies on two pieces of information to support its contention that the County intends to suspend its license. First, attorneys for the MBI have indicated that no decision has been made as to whether the MBI will refer the Cleo's matter to the County. (*Id.* ¶¶ 15–17, 21.) Second, a "case progress sheet" reveals that a Cleo's dancer was offered a plea and a possible probation reduction if she serves as a witness in the "CLEO case" or if her statement about the "management activities" of Cleo's is helpful. (*Id.* ¶¶ 19–20.)

■ Ripeness determinations present two relevant inquiries: "1) whether the issues are fit for judicial decision and 2) the hardship to the parties of withholding court consideration." *Konikov v. Orange County*, 410 F.3d 1317, 1322 (11th Cir. 2005) (citing *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)). Under this standard, Plaintiff's challenges to the substantive criminal provisions of the AEC and its facial challenges to the suspension provisions are ripe. "[P]rospective enforcement of an ordinance has been found sufficient to generate a live case." *D.H.L. Assocs. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir.1999). This is particularly so when constitutional claims are at issue. *Id.; Sable Commc'ns of Cal., Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 187 (9th Cir.1989) ("A threat that emanates from a regulation, compulsory in nature, to which the plaintiff is currently subject, is real and immediate if the possibility of enforcement is more than hypothetical.").

■ The criminal provisions challenged here regulate the very movements an erotic dancer can make during a performance. Dancers at Cleo's have been arrested for violating these provisions. Because the ordinances criminalize the protected ex-

pression conveyed through erotic dance, the ordinances chill the dancers' exercise of free expression. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 399–400 (6th Cir.2001). Thus, those claims are ripe for review even though the County has not yet sought to suspend or revoke Plaintiff's license based on the 2004 arrests. Plaintiff's facial challenges to the AEC's license suspension and revocation provisions are also ripe. *See id.* at 399 (holding that plaintiffs had standing to pursue facial challenges to a licensing scheme even though the government had "not yet sought to suspend or revoke plaintiff's licenses" and that those purely legal claims were ripe). The claims are justiciable and, if Plaintiff must comply with an unconstitutional ordinance, Plaintiff will be prejudiced by the withholding of judicial review.

### V. Res Judicata

■ The County contends that some of Plaintiff's claims are barred by res judicata. Res judicata, or claim preclusion, conserves judicial resources by preventing parties from bringing successive, repetitive claims. If a party seeks to relitigate "matters that were litigated or could have been litigated in an earlier suit," res judicata requires dismissal of the subsequent claim. *Koziara v. City of Casselberry*, 239 F.Supp.2d 1245, 1254 (M.D.Fla.2002). In order to show that the instant claims are barred by res judicata, the County must satisfy four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001).

Determining whether two causes of action are the same for purposes of res judicata requires a court to "compare the substance of the actions, not their form." *Koziara*, 239 F.Supp.2d at 1257 (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir.1986)). "If the instant claims arise 'out of the same nucleus of operative fact,' or are 'based on the same factual predicate' as the claims in [prior] court suits, then the causes of action are the same for res judicata purposes." *Id.* (quoting *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir.2002)). If the claims are not absolutely identical, a court may "ask whether the plaintiff could, or rather should, have brought the second claim with the first lawsuit." *Trustmark*, 299 F.3d at 1270 (citing *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir.1999)).

 The County identifies two sets of proceedings that it contends qualify as previously adjudicated matters between the parties that preclude at least some of Plaintiff's current claims. The first is a state criminal proceeding against Ms. Charmant, a Cleo's dancer, whose challenge to the constitutionality of section 3–129(3) in a motion to dismiss her criminal charges was rejected. *See State v. Charmant*, No. 48–2004–MM–12459–O (Fla. 9th Cir.Ct. May 10, 2005); Def.'s Mem. at 7. The denial of Ms. Charmant's motion to dismiss amended information, however, involved neither a final judgment on the merits nor identity of parties; it has no res judicata effect on the claims presented here.

 The County also identifies Plaintiff's suits arising from the County's 2002 attempt to suspend Plaintiff's license as res judicata of the current challenges to the suspension, revocation, and hearing process provisions. (Def.'s Mem. at 2; Def.'s Trial Br., Doc. 113 at 8.) Plaintiff brought a Complaint for Permanent Injunction and a Writ of Prohibition challenging the constitutionality of the AEC's method of selecting and compensating hearing officers. The claims were dismissed with prejudice following the parties' settlement.[5] The County argues that the dismissal is a negative adjudication on the merits and that it has a preclusive effect on aspects of this suit.

Stipulated dismissals with prejudice based on settlement may constitute res judicata of subsequent, repetitive claims. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir.2004); *see also United States v. Ameritrade Terminals, Inc.*, 177 Fed.Appx. 855, 857–58 (11th Cir.2006); *Horton v. Metro. Life Ins. Co.*, 459 F.Supp.2d 1246, 1251–52 (M.D.Fla. 2006). If the parties entered into a settlement agreement, a modified res judicata effect applies "to the matters specified in the settlement agreement, rather than the original complaint." *Norfolk S. Corp.*, 371 F.3d at 1288. Neither party has identified or filed a settlement agreement relating to the 2003 voluntary dismissal, and thus the Court presumes none exists. "In the absence of a settlement agreement ... a judgment of dismissal pursuant to Rule 41[, Federal Rules of Civil Procedure,] should be given the same res judicata ef-

---

5. Plaintiff Ramses [sic], Inc. d/b/a Cleo's filed a Complaint for Permanent Injunction and a Petition for Writ of Prohibition challenging the suspension, revocation, and hearing provisions of Orange County's Adult Entertainment Code in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida. *See Ramses [sic], Inc. v. Wood*, No. 03CA–5978 (Fla. 9th Cir. Ct. filed June 24, 2003); *Ramses [sic], Inc. v. Wood*, No. 03CA–6394, Writ No. 03–38 (Fla. 9th Cir. Ct. filed July 7, 2003). Although the initial action was styled against Earl K. Wood as Tax Collector of Orange County, Florida, Orange County was added as a party to the complaint for injunctive relief.

fect as any other judgment." *Id.* (citing *Astron Indus. Assocs. v. Chrysler Motors Corp.,* 405 F.2d 958, 960 (5th Cir.1968)). Thus, traditional res judicata principles will preclude any overlapping claims if the four res judicata elements are established here.

Three res judicata elements are easily satisfied in this case: the earlier cases were brought in a court of competent jurisdiction, both Plaintiff and the County are parties to each suit, and, as already discussed, the dismissal with prejudice operates as a final adjudication on the merits. The final element to consider—and the only element truly disputed by Plaintiff—is whether this case involves the same causes of action as the prior proceeding.

Plaintiff contends that the 2003 suits were based on different facts than those involved here. Plaintiff points out that the injunction and writ of prohibition were based on the appointment of Hearing Officer Solileau in the 2002 administrative action against Plaintiff. Plaintiff further argues that the 2003 suit was based on due process under the Florida Constitution, not the federal constitution. None of these arguments, however, preclude the res judicata effect of the previous proceedings as they relate to Plaintiff's current constitutional challenge to section 3–37, Selection of a Hearing Officer.

The only factual difference between the first proceeding and this one is that the 2003 suits contained factual allegations, while the instant facial challenge does not. To the extent that Plaintiff does rely on facts to make out its current claim, however, Plaintiff relies on the 2002 proceedings and cites the 2002 Complaint for Permanent Injunction in its Cross–Motion for Summary Judgment. (Doc. 95 at 17–18.)

Plaintiff argues that "in 2002 when Orange County sought to suspend Cleo's license, this attorney contacted the Florida Division of Administrative Hearings ("DOAH") ... [to] arrange for a DOAH hearing officer to hear the suspension matter .... Orange County rejected this proposal." (*Id.*) The challenged ordinance is identical in both cases, as is Plaintiff's contention that the County's method of selecting and compensating hearing officers violates due process because of an inherent bias in the system. Though Plaintiff styled its 2003 suit as one arising under the Florida Constitution, Plaintiff could have brought its federal facial challenge to section 3–37 in conjunction with that earlier case. The only authority on which Plaintiff currently relies, *Haas v. County of San Bernardino,* 27 Cal.4th 1017, 119 Cal.Rptr.2d 341, 45 P.3d 280 (2002), was available when Plaintiff filed its first complaint in 2003. Plaintiff is precluded from raising the federal challenge now because that claim could have been adjudicated competently during the substantially similar state court proceedings.[6] Plaintiff's challenge to section 3–37 of the AEC is barred by res judicata.

### VI. Third–Party Standing

Plaintiff's traditional standing to litigate the constitutionality of the licensing suspension provisions has not been challenged, and rightly so. *White's Place v. Glover,* 222 F.3d 1327, 1329 (11th Cir.2000) ("We will not force a plaintiff to choose between intentionally violating a law to gain access to judicial review and foregoing what he or she believes to be constitutionally protected activity in order to avoid ... [sanctions].") The County does argue, however, that Plaintiff lacks third-party standing to litigate the rights of its danc-

---

**6.** Even if Plaintiff's claim against the County's system of selecting, paying, and retaining hearing officers should not be barred by res judicata, Plaintiff's due process challenge to

the hearing officer provision—as opposed to Plaintiff's First Amendment challenges to the suspension and revocation provisions—is not ripe for adjudication.

ers by challenging the substantive criminal provisions of the AEC. (Def.'s Mem. at 8–9.)

Third-party standing is an exception to the prudential requirement that a party must litigate its own rights and interests and not those of a third party. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1251–52 (5th Cir.1995). A party may assert a third party's rights if they share a close relationship, *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (school and parents); *Craig v. Boren*, 429 U.S. 190, 195, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (bartender and customers); if the third party is unlikely or unable to defend his or her rights in court, *Barrows v. Jackson*, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Eisenstadt v. Baird*, 405 U.S. 438, 446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); or if the third party's rights are asserted in a First Amendment overbreadth challenge to a statute, *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). All three types of third-party standing have been used to allow adult establishment owners to litigate the First Amendment rights of their entertainers.

Even if a party may properly raise a third party's First Amendment rights, the litigant must still be able to point to an injury in fact and be able to sufficiently frame the issues for adjudication. *Clark v. City of Lakewood*, 259 F.3d 996, 1010 (9th Cir.2001). Potential financial injury with a "vested interest in having [an o]rdinance overturned" is sufficient to satisfy the standing requirement. *Id.* at 1011 (analyzing standing regarding a facial overbreadth claim). "[A] business ... may properly assert its employees' or customers' First Amendment rights where the violation of those rights adversely affects the financial interests or patronage of the business." *Hang On, Inc.*, 65 F.3d at 1252 (classifying this principle as falling under both the close relationship exception and the "unlikely to defend" exception); *White's Place*, 222 F.3d at 1330 (classifying this rule as a form of associational standing).

Plaintiff has a strong financial interest in the activities that take place within its establishment and, if the ordinances are unconstitutional, there is "a 'credible risk the [o]rdinance could cause self-censorship and chilling of expression.'" *Score LLC v. City of Shoreline*, 319 F.Supp.2d 1224, 1231 (W.D.Wash.2004) (quoting *Clark*, 259 F.3d at 1010). The ordinances regulate the purpose of the business—adult entertainment. *See White's Place*, 222 F.3d at 1330. The dancers are unlikely to defend their First Amendment rights in a court of law. Additionally, Plaintiff has standing because it may be criminally liable and may have its license suspended or revoked if a worker violates the provisions. *See Score*, 319 F.Supp.2d at 1231 (upholding plaintiff's standing to challenge simulated sexual conduct ordinance because plaintiff had "been cited for violations in the past"). Thus, Plaintiff has a strong interest in challenging the substantive provisions, which it believes criminalizes protected expressive conduct.

### VII. Standard of Review Over the AEC's Criminal Prohibitions

The parties argue for different standards of review with regard to the AEC's criminal provisions. Plaintiff argues that strict scrutiny should apply to sections 3–129(3) and (6) because the ordinances are content-based regulations of expressive conduct and that intermediate scrutiny should apply to 3–129(9), the intentional touching provision. Alternatively, Plaintiff argues that intermediate scrutiny should

apply to all of the criminal provisions. The County, on the other hand, argues that sections 3–129(3), (6), and (9) should be subjected to rational basis review because the ordinances regulate non-expressive conduct. In the alternative, the County submits that intermediate scrutiny should control the analysis. The parties agree to the correct standard in each of their alternative propositions—intermediate scrutiny is the proper standard of review as to all three provisions.

Nude dancing is protected as "expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so." *Barnes v. Glen Theatre. Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Sections 3–129(3) and (6) of the AEC regulate a dancer's movements and restrict the manner in which a dancer crafts an erotic dance for the audience. Section 3–129(9) may apply to a dancer's performance (for example, as during a lap or straddle dance), but the intentional touching provision also regulates the conduct of workers who are not engaged in constitutionally protected conduct. If this Court were asked only to consider the constitutionality of section 3–129(9) as it applies to pure conduct in isolation from a dancer's protected expression, then the County may have correctly cited the rational basis test as the governing standard of review. *See, e.g., Willis v. Town of Marshall*, 426 F.3d 251, 262 (4th Cir.2005) (applying rational basis review to dancing as conduct because it contained no expressive element). Each of the criminal provisions, however, attempts to regulate conduct protected by the First Amendment. The rational basis test would not adequately protect the interests at stake.

Also inappropriate is the strict standard of review advocated by Plaintiff.[7] Strict scrutiny is the exacting review required for regulations that target speech or expressive conduct, based on its content. *See United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). While the ordinances at issue may be content-based if considered without regard to the legislative purpose behind them, the evolution of nude-dancing jurisprudence has made clear that when an ordinance's aim is to reduce or eliminate the deleterious secondary effects associated with adult entertainment establishments, the ordinance is, legally, content-neutral. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1306 (11th Cir.2003) (titling this category as "content-based regulations treated as content-neutral") (capitalization omitted); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1364 (11th Cir.1999); *see also Clark*, 259 F.3d at 1004 ("Restrictions upon nude dancing are considered content-neutral because they are aimed at the so-called secondary effects of nude dancing and not at expressive conduct.") (citing *Pap's A.M.*, 529 U.S. at 289–92, 120 S.Ct. 1382). That is, when the claimed intent of the law is not to suppress expressive conduct based on its message but to combat the societal ills which arguably naturally flow from that conduct, then

---

**7.** Although Plaintiff advocated an intermediate level of review as an alternative to strict scrutiny review in its First Amended Complaint (First Am. Compl. ¶ 40), Plaintiff only mentioned the strict standard in its Cross–Motion for Summary Judgment (Doc. 95 at 7–10). In addition, Plaintiff's summary judgment motion, while referencing the analysis of several other courts as a basis for holding these provisions unconstitutional, fails to mention any precise legal theory under which it bases its challenges. If Plaintiff meant to raise any claims regarding these provisions beyond the basic one that it burdens free expression, Plaintiff has not sufficiently pled or preserved those claims.

the law is content-neutral and strict scrutiny is not justified. *See Pap's,* 529 U.S. at 294, 120 S.Ct. 1382 ("If States are to be able to regulate secondary effects, then *de minimis* intrusions on expression ... cannot be sufficient to render the ordinance content based.").

Two competing intermediate level tests have been articulated by the United States Supreme Court, both of which have been used to evaluate the constitutionality of regulations aimed at sexually-oriented businesses. Either of these tests may be applied to ordinances that are arguably content-based but which are "justified without reference to the content of regulated speech" because they are designed to combat the secondary effects associated with adult entertainment. *Flanigan's Enters. v. Fulton County,* 242 F.3d 976, 983 (11th Cir.2001). Though the tests are similar and often produce identical results, in select cases the test chosen may be outcome-determinative. *Lady J.,* 176 F.3d at 1364–65.

In *Renton,* 475 U.S. at 47–49, 106 S.Ct. 925, the Court employed a time, place, or manner test for a regulation that might be viewed as content-based but that targeted the undesirable secondary effects associated with adult establishments. The *Renton* test permits government regulations that "are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. 925. *Renton's* application has largely been relegated to judicial review of zoning ordinances or ordinances which on their face are time, place, and manner restrictions.

▮ The second test was handed down in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), a case which considered the constitutionality of a ban on draft card burning enacted during the Vietnam War protests. Since *O'Brien* was decided, a four-part test has

been used "to analyze the constitutionality of government regulation of expressive conduct, that is, conduct that contains both 'speech' and 'nonspeech' elements." *Brownell v. City of Rochester,* 190 F.Supp.2d 472, 485 (W.D.N.Y.2001) (citing *O'Brien,* 391 U.S. at 376, 88 S.Ct. 1673). Under the *O'Brien* test, a regulation is permitted if: (1) "it is within the constitutional power of the Government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien,* 391 U.S. at 376–77, 88 S.Ct. 1673.

The *O'Brien* test applies to ordinances that directly regulate nude dancing, while *Renton* governs challenges to ordinances that may affect nude dancing, but that do not directly regulate it. *Lady J. Lingerie,* 176 F.3d at 1364–65 (applying *Renton* to ordinances dictating the hours of operation and the physical size of adult entertainment establishments as time, place, and manner restrictions); *Brownell,* 190 F.Supp.2d at 486 (applying *O'Brien* to ordinance restricting specified sexual activities including erotic touching); *Giovani Carandola, Ltd. v. Fox,* 396 F.Supp.2d 630, 637–38 (M.D.N.C.2005) (applying *O'Brien* to ordinance proscribing fondling of certain body parts and simulated sexual activities), *aff'd in part, rev'd in part, vacated in part,* 470 F.3d 1074 (4th Cir.2006). The AEC's criminal provisions, which directly regulate nude dancing, will be analyzed under the intermediate scrutiny of *O'Brien.*

### VIII. Plaintiff's Constitutional Challenges to the AEC's Criminal Provisions

Plaintiff contends that three of the AEC's criminal provisions unconstitutionally limit protected expression. Plaintiff

claims that the third definition of SSA, AEC § 3–6(3), as prohibited by section 3–129(3), and the entire definition of SSA, AEC § 3–6, as applied in section 3–129(6), violate the First and Fourteenth Amendments. Additionally, Plaintiff asserts that the limited no-touch provision of section 3–129(9) violates the First, Fifth, and Fourteenth Amendments.

### A. Fondling Provision—Section 3–129(3)

Section 3–129(3) prohibits workers at adult entertainment establishments from engaging in SSAs at the establishment. AEC § 3–129(3). The provision also holds an operator criminally liable if he or she "knowingly or with reason to know, permit[s], [s]uffer[s], or allow[s] any worker to" engage in any SSA. *Id.* at § 3–129. Plaintiff does not argue that its dancers should be allowed to engage in the SSAs listed in subsections (1), (2), or (4) of section 3–6. Plaintiff only challenges the third definition of SSA as used in this section.

### 1. Mootness

Initially, with respect to section 3–129(3) and partially with respect to the claims against section 3–129(6), the County asserts that Plaintiff's claims have been mooted as a result of the County's amendment to the fondling provision—section (3) of the definition of SSA. Plaintiff filed its First Amended Complaint on September 29, 2005, including claims based on the then-existing definition of SSA.[8] On June 27, 2006, the County amended the definition of an SSA[9] (Doc. 105–2) and asked this Court to take judicial notice of the amendment (Doc. 104).[10] Directing this Court to the recent decision of *Taurus Property Ventures, LLC v. City of Plant City,* No. 06–10768, 2006 WL 1813901 (11th Cir. June 30, 2006) (Doc. 109), the County argues that the ordinance, as amended, moots at least some of Plaintiff's challenges to the criminal provisions of the AEC. (Doc. 108 at 2, 8; Doc. 113 at 10–11; Doc. 117.)

The mootness doctrine demands that Article III's case or controversy requirement be satisfied throughout a case's judicial proceedings because the federal courts are prohibited from issuing advisory opinions. *United States v. Orrega,* 363 F.3d 1093, 1095 (11th Cir.2004). If a case is rendered moot because it lacks an active controversy, the case must be dismissed unless the case falls within one of the recognized exceptions to the mootness doctrine. *Id.* One such exception is that a case will not be dismissed following the

---

**8.** Specified sexual activity was previously defined as:

 (1) Human genitals in a state of sexual stimulation, arousal or tumescence; or
 (2) Acts of human anilingus, bestiality, buggery, cunnilingus, coprophagy, coprophilia, fellatio, flagellation, masochism, masturbation, necrophilia, pederasty, pedophilia, sadism, sadomasochism, sapphism, sexual intercourse, sodomy, urolagnia or zooerasty; or
 (3) Fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast; or
 (4) Excretory functions as part of or in connection with any of the activities set forth in subsections (1) through (3).

AEC § 3–6, Definitions, "Specified Sexual Activity."

**9.** As amended, section (3) now reads: "Fondling, stroking or rubbing of human genitals or anus."

**10.** Plaintiff does not oppose Orange County's request for judicial notice (Doc. 107), but it does contest the credibility of the evidence presented to the Orange County Board of County Commissioners. The Court grants the motion requesting judicial notice of the County's amendment to section 3–6(3), AEC. (Doc. 104.)

defendant's voluntary cessation of the offending conduct, for a dismissal on such grounds may serve as the defendant's license to return to that conduct. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

■ When a plaintiff challenges the constitutionality of an ordinance and that ordinance is subsequently repealed or amended, the repeal or amendment may be viewed as a form of voluntary cessation by the governmental entity of the "offending conduct." Despite the exception for voluntary cessation, however, the constitutional challenge is usually still rendered moot in the event of a repeal or amendment because the law presumes that governmental entities will not enact unconstitutional laws. *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1310 (11th Cir.2000); *Troiano v. Supervisor of Elections,* 382 F.3d 1276, 1283 (11th Cir.2004). If there is a substantial likelihood that the law will be reenacted, however, the case will proceed despite the amendment. *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1328–29 (11th Cir.2004); *cf. Deja Vu,* 274 F.3d at 387. And, if a plaintiff's constitutional challenges to an ordinance remain valid despite an amendment to the ordinance challenged, there is no reason to find the claim moot. "[T]he 'superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to

render the original controversy a mere abstraction, the case [is] not moot.'" *Coalition for Abolition,* 219 F.3d at 1310 (quoting *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir.1992)).

■ Orange County argues that the replacement of "or other erotic touching" with "stroking or rubbing," and the deletion of "pubic region, buttock, ... [and] female breast" from the definition of SSA have mooted at least one of Plaintiff's claims. With the deletion of "erotic touching," the definition no longer expressly emphasizes the erotic nature of the dancer's activity. *See Brownell,* 190 F.Supp.2d at 486, 488–92 (holding unconstitutional under *O'Brien* a provision virtually identical to the AEC's pre-amendment fondling provision, in part because it regulated "erotic" and non-obscene touching). Though the *Brownell* court placed heavy emphasis on the ordinance's "erotic" descriptor, it held the fondling ordinance violated two parts of the four-part *O'Brien* test because the provision was related to the suppression of free expression and because the regulation was greater than was essential to further the government's interest in combating unwanted secondary effects. *Id.* at 488. Thus, even without the "erotic" qualifier, the fondling proscription itself may have been unconstitutional for exceeding what was necessary to further the government's interest. Because the ordinance continues to regulate the moves that a dancer may employ to convey an erotic message, Plaintiff's challenge to the constitutionality of the ordinance still stands and is not mooted by the County's amendment to the ordinance.[11]

---

11. Had Plaintiff alleged that "other erotic touching" or "pubic region" rendered the third subsection of the SSA definition unconstitutionally vague, Orange County's mootness argument might have merit because the amendments would correlate with the challenge. Plaintiff has not presented a vagueness claim. What Plaintiff has claimed is that the definition of SSA is a content-based restriction of protected expression in that it attempts to edit the erotic element out of the adult entertainer's expressive conduct. Just because the County has made the definition more pointed does not render Plaintiff's claim moot.

### 2. Application of O'Brien

Of the four cases cited by Plaintiff, only one applied *O'Brien;* the remainder applied the more exacting, strict scrutiny standard of review. *See Dream Palace v. County of Maricopa,* 384 F.3d 990, 1019–21 (9th Cir.2004) (applying strict scrutiny to ordinance proscribing the movements of dancers in adult entertainment establishments); *Schultz v. City of Cumberland,* 228 F.3d 831, 843–44, 846–48 (7th Cir.2000) (applying strict scrutiny to fondling statute that was a content-based restriction on expressive conduct because it only applied to adult establishments "based on the content of the materials they sell or display"); *Centerfolds, Inc. v. Town of Berlin,* 352 F.Supp.2d 183, 193–94 (D.Conn.2004) (applying strict scrutiny to an ordinance virtually identical to the AEC's pre-amendment ordinance); *Score,* 319 F.Supp.2d 1224 (applying *O'Brien* in a facial overbreadth challenge of a simulated sexual conduct provision that precluded touching the sex organs or anus); *see also BSA, Inc. v. King County,* 804 F.2d 1104, 1110 (9th Cir.1986); *Giovani Carandola,* 396 F.Supp.2d at 652–53 (applying *O'Brien* to ordinance that restricted erotic movements including fondling or touching certain body parts); *Brownell,* 190 F.Supp.2d at 488–92 (applying *O'Brien* to erotic touching provision).

■■■ Applying the *O'Brien* standard, the definition of SSA pertaining to fondling that is prohibited by section 3–129(3) is constitutionally infirm because it unnecessarily places a substantial burden on protected expression. *O'Brien*'s first prong is easily satisfied because the County certainly has the constitutional power to enact the challenged ordinance pursuant to its police power. *Pap's A.M.,* 529 U.S. at 296, 120 S.Ct. 1382; *Barnes,* 501 U.S. at 567, 111 S.Ct. 2456. As the preamble states, the ordinances were enacted "in the interest of the health, peace, safety, morals, and general welfare of the people of the county." AEC § 3–2. Plaintiff does not dispute that Orange County has the power to enact the AEC.

The second prong of *O'Brien* asks whether the regulation furthers an important or substantial government interest. The purpose of the AEC, like most codes regulating sexually-oriented businesses, is to curb the unwanted secondary effects associated with adult entertainment establishments. The AEC's preamble cites evidence and testimony presented in a series of public hearings regarding the prostitution, drug use, violent crime, and lower property values, among other things, that may tend to accompany adult entertainment establishments. *See* AEC § 3–5. The County has attached voluminous exhibits detailing the evidence of secondary effects presented to the Orange County Board of Commissioners as a foundation for adopting the AEC. (Pub. Hr'g Trs., Docs. 65, 67–78); *see also* AEC § 3–5; *Ward v. County of Orange,* 55 F.Supp.2d 1325, 1332 (M.D.Fla.1999) (discussing the secondary effects evidence supplied by Orange County and holding that the AEC is content-neutral). Plaintiff has not attempted to refute the evidence amassed by the County.

The County argues that the definition is not overbroad because it validly prohibits "the fondling or erotic touching of the female breast, such as workers placing their breasts on the face, neck, or mouth of a patron, a patron sucking a worker's breast, or the groping of a worker's breast by another." [12] (Def.'s Mem. at 11.) The County has conflated two of the criminal provisions that are the subject of this suit. *See* AEC §§ 3–129(3) & (9) (the fondling and intentional touching provisions). The

---

12. According to the County's filings, "female breast" has been amended out of the definition of specified sexual activity. (Doc. 105–2.)

County's examples of overt sexual acts between workers and patrons are sordid and extreme, any occurrence of which could be prohibited by the AEC. The fondling provision, however, does not prohibit these acts and the provision does not confine itself to fondling between workers and patrons; it proscribes the movements that a dancer may make while dancing on a stage removed from the audience. It is unclear to how secondary effects are mitigated by preventing a dancer from touching herself on stage when that self-touching falls short of masturbation, which is plainly prohibited by the second definition of SSA. *See Brownell,* 190 F.Supp.2d at 489–90 ("Will prostitution or the transmission of sexually transmitted diseases decrease, for example, simply because performers are not allowed to touch certain parts of their bodies?").

*O'Brien,* however, may not demand such a direct and significant link between the specific ordinance challenged and the interest of lessening associated secondary effects. *Compare Pap's A.M.,* 529 U.S. at 280, 120 S.Ct. 1382 (holding that even though "requiring dancers to wear pasties and G-strings may not greatly reduce these secondary effects, *O'Brien* requires only that the regulation further the interest in combating such effects"), *with Brownell,* 190 F.Supp.2d at 489 ("For the ban on specified sexual activities to pass constitutional muster, however, there must be some demonstrable nexus between those activities and the evils sought to be addressed.... It is unclear ... how those secondary effects are going to be affected by enforcing particular restrictions on a performer's movements."). Thus, even assuming that the fondling provision does somehow lessen the ills associated with sexually-oriented businesses, the fondling provision still fails to satisfy the remaining *O'Brien* factors.

*O'Brien*'s third prong requires that the regulation be unrelated to the suppression of free expression in order to legitimately regulate expressive conduct without trampling on First Amendment rights. As in *Brownell,* 190 F.Supp.2d at 488, and *Score,* 319 F.Supp.2d at 1236–37, the fondling provision here is related to the suppression of free expression.[13] The SSA ban only applies to workers or dancers in adult entertainment establishments; it is not a law of general and universal applicability. *Cf. Barnes,* 501 U.S. at 570–71, 111 S.Ct. 2456 (holding constitutional a statute requiring that dancers wear pasties and G-strings as part of a universal public nudity law and noting that the statute did not deprive the dance of its erotic message). While a general ban on nudity regulates conduct without regard to any message conveyed by dancers appearing in a state of nudity, the ordinance here "directly restricts the manner in which the dancers perform and the message that they convey" without exempting nonobscene dancing. *Score,* 319 F.Supp.2d at 1237; *see also Barnes,* 501 U.S. at 571, 111 S.Ct. 2456 (noting that it was not the dancing, but the nudity, that was generally proscribed). Because the ordinance directly targets the precise movements that a dancer may employ, the ordinance is related to the suppression of free expression despite the AEC's general aim of reducing the harmful byproducts of sexually-oriented businesses.

---

**13.** There is some interplay between *O'Brien*'s third and fourth prongs. While the government's interest in reducing unwanted secondary effects is, in and of itself, unrelated to the suppression of free expression, *O'Brien*'s third prong is violated in part because the ordinance exceeds what is necessary to further the governmental interest in violation of *O'Brien*'s fourth prong. That is, because the restriction imposes a far greater burden on expression than is permissible, the restriction is at least partially related to the suppression of protected expression.

Finally, notwithstanding the outcome of the analysis of prong three, the SSA definition prohibiting all fondling of certain body areas by workers in adult entertainment establishments fails to satisfy *O'Brien*'s fourth prong, which requires that the restriction be no greater than is essential to the furtherance of the government's stated interest in curbing secondary effects. Here, in contrast to the regulations upheld in both *Barnes* and *Pap's A.M.*, the impact on the expressive elements of a dancer's performance is more than *de minimis*. The Seventh Circuit in *Schultz* aptly described the impermissible burden imposed by a similar ordinance[14]:

> By restricting the particular movements and gestures of the erotic dancer ... the Ordinance unconstitutionally burdens protected expression. The dominant theme of nude dance is an emotional one; it is one of eroticism and sensuality. [The Ordinance] deprives the performer of a repertoire of expressive elements with which to craft an erotic, sensual performance and thereby interferes substantially with the dancer's ability to communicate her erotic message. It interdicts the two key tools of expression in this context that imbue erotic dance with its sexual and erotic character-sexually explicit dance movements and nudity. Unlike a simple prohibition on full nudity, [the Ordinance] does much more than inhibit that portion of the expression that occurs when the last stitch is dropped. [The Ordi-

nance] constrains the precise movements that the dancer can express while performing. The dancer may use non-sexually explicit elements and semi-nudity to convey a certain degree of sensuality, but putting taste aside, more explicit and erotic content is commonly available on primetime television without being fairly regarded as adult entertainment.... Because this speech is not obscene, government may not simply proscribe it. [The City] cannot avoid this dictate by regulating nude dancing with such stringent restrictions that the dance no longer conveys eroticism nor resembles adult entertainment.

*Schultz*, 228 F.3d at 847 (internal quotations and citations omitted). Some self-touching, even of the genitals or anus—no matter how crude or distasteful—may be "central to the expressive nature of the dance itself." *2025 Emery Highway, L.L.C. v. Bibb County*, 377 F.Supp.2d 1310, 1331 (M.D.Ga.2005). Subsection (2) of the SSA definition already prohibits workers from engaging in acts of masturbation; subsection (3)'s attempt to limit the non-obscene self-touching by adult entertainers impermissibly encroaches on a dancer's ability to engage in a perhaps disfavored, but nonetheless protected, form of expression. Therefore, the definition of SSA that prohibits fondling, stroking, or rubbing of human genitals or anus—short of masturbation—as referenced in section 3–129(3) is unconstitutional. In accordance with section 1–11 of the Orange County Code,[15]

---

**14.** Though the *Schultz* definition of SSA is identical to the AEC definition prior to its recent amendment by the Board of County Commissioners, the analysis remains the same because the amended version did not lessen the burden previously imposed on protected expression.

**15.** The Orange County Code's severability provision provides in part:

> [I]f any section, subsection, sentence, clause, phrase or portion of this Code or any ordinance is for any reason held or declared to be unconstitutional, inoperative or void, such holding or invalidity shall not affect the remaining portions of this Code or any ordinance, and it shall be construed to have been the legislative intent to pass this Code or such ordinance without such unconstitutional, invalid or inoperative part therein, and the

the third definition of SSA contained in section 3–6, is severed from the AEC.

### B. Simulation of SSA, Section 3–129(6)

 Section 3–129(6) provides that it is unlawful for a worker to "[d]isplay or expose any specified anatomical area while simulating any specified sexual activity with any other person at the adult entertainment establishment, including with another worker." AEC § 3–129(6). Both the Seventh and Ninth Circuit Courts of Appeal have held similar sex act ordinances unconstitutional. *See Schultz,* 228 F.3d at 847 (Seventh Circuit); *R.V.S., L.L.C. v. City of Rockford,* 361 F.3d 402, 414 (7th Cir.2004); *Dream Palace,* 384 F.3d at 1017–22 (Ninth Circuit); *see also Fly Fish,* 337 F.3d at 1306–07 (Eleventh Circuit) (acknowledging *Schultz*'s invalidation of an ordinance banning certain movements and gestures by an adult entertainer). *But see Giovani Carandola,* 470 F.3d 1074 (4th Cir.2006). In *Schultz* and *Dream Palace,* the laws defined adult entertainment establishments by the depiction or simulation of sexual activities and also banned those sexual activities within adult establishments. The laws, therefore, effectively banned nude dancing in sexually oriented businesses, thus justifying the application of strict scrutiny. Orange County's AEC is not as clear in that it does not define an "adult performance establishment" by the very conduct that the Code also prohibits, as in *Schultz* and *Dream Palace. See* AEC § 3–6. The definition, however, does provide an affirmative defense to businesses which are

not classified as "adult" or which are not "distinguished by an emphasis on, or the promotion of, matters or persons depicting, describing, displaying, exposing, simulating or relating to specified sexual activities or specified anatomical areas." *Id.* Section 3–129(6)'s proscription, then, does seem to completely ban the very activity that defines the business under the Code. Even without this "catch–22," *see Dream Palace,* 384 F.3d at 1018, which might warrant strict scrutiny, an ordinance that restricts certain dance movements and gestures above and beyond prohibiting overt sex acts, is unconstitutional under *O'Brien* because the restriction exceeds what is essential to further the government's legitimate interest in curbing unwanted secondary effects associated with nude dancing.

The County contends, however, that the AEC's "simulation" proscription contains two limiting qualifiers, which distinguish it from the ordinances stricken in *Schultz, Score,* and *Dream Palace.* First, the ordinance only forbids simulation of sex acts with another person; it does not forbid solo simulation. AEC § 3–129(6). Second, workers are only prohibited from simulating SSA while simultaneously displaying or exposing a specified anatomical area. *Id.* However, neither qualification lessens the provision's unconstitutional restriction on protected expressive conduct.

The first qualifier, which requires a second person be involved in the simulation, is meaningless according to Plaintiff because, it contends, an audience member always constitutes the "other" person.[16] The

---

remainder of this Code or such ordinance after the exclusion of such part or parts shall be deemed and held to be valid as if such part or parts had not been included herein.
Orange County Code § 1–11.

**16.** To illustrate the hollowness of this qualifier, Plaintiff points to Ms. Charmant, who was arrested for violating section 3–129(6) for,

presumably, simulating fellatio while in close proximity to an MBI agent's lap area. (First Am. Compl. ¶ 27.) There, according to Plaintiff, the agent himself constituted the other person subjecting Ms. Charmant to arrest. The simulation charge against her, however, was ultimately dropped. (Doc. 95 at 7–8; Doc. 84–4, –5, –6.)

County, on the other hand, argues that the ordinance's requirement of another person "saves the constitutionality of the provision" [17] because "two people slow dancing together is not constitutionally protected expressive conduct." (Def.'s Mem. at 12) (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989)). The County's reliance on *Stanglin* is misplaced. *Stanglin* held that the slow dancing of teenagers in a dance hall was not protected by the First Amendment because it did not qualify as the type of intimate association or expressive association defined in *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The dancing teenagers in *Stanglin* were not intimately associated or coming together to engage in activities protected by the First Amendment. *Stanglin*, 490 U.S. at 24–25, 109 S.Ct. 1591. Two people coming together for recreational dance in a public dance hall do not convey a message in the same sense that adult entertainers do when they perform on a stage in front of an audience. *See Miller v. Civil City of South Bend*, 904 F.2d 1081, 1092 (7th Cir.1990) (Posner, J., concurring in opinion and judgment), *rev'd by Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). *Stanglin* is inapposite and the County cites no cases treating a similar restriction that seeks to regulate the movements dancers may make based on the number of dancers then performing (two or more).

The "other person" requirement is not a remedy for this otherwise unconstitutional statute. It is certainly conceivable that two adult performers might convey a message that is different, but nonetheless protected, from the message portrayed by a solo dancer. The activities that the dancers may permissibly engage in are already constrained by the AEC's remaining provisions, including the other definitions of actual SSA. The County has offered no justification for why a single dancer may not be prevented from engaging in non-obscene simulated sexual activities during a performance but why two performers may be so prevented. The Court was unable to locate authority holding that touching between two dancers can be constitutionally proscribed, but the district court in *Threesome Entertainment v. Strittmather* suggested that such a prohibition would be unconstitutional. 4 F.Supp.2d 710, 723 n. 8 (N.D.Ohio 1998) ("It is less clear whether a prohibition of non-overtly sexual touching *between two dancers while performing*, even if it included a scienter requirement, would also be constitutional; the Court has been unable to locate any case law addressing this specific question, which may implicate the suppression of protected expression.") The "other person" requirement does not save the ordinance.

The other qualifier in section 3–129(6) requires that a dancer display or expose a specified anatomical area [18] in order to be

---

17. It is unclear whether the County is truly conceding that the statute would be unconstitutional absent the "other person" requirement or whether this statement is for dramatic effect.

18. AEC § 3–6 defines "specified anatomical areas" as:

(1) Less than completely and opaquely covered:
a. Human genitals or pubic region;
b. Human buttocks;

c. That portion of the human female breast encompassed within an area falling below the horizontal line one would have to draw to intersect a point immediately above the top of the areola (the colored ring around the nipple). This definition shall include the entire lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breast exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel, provided the areola is not so exposed;

criminally culpable under the statute. While a municipality may permissibly require dancers to don G-strings and pasties while performing because the burden that requirement places on free expression is only *de minimis, see Pap's A.M.*, 529 U.S. at 279, 120 S.Ct. 1382; *Barnes*, 501 U.S. at 565, 571, 572, 111 S.Ct. 2456, the Eleventh Circuit has suggested that requiring more in the way of clothing may violate the fourth prong of *O'Brien. Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee County*, 337 F.3d 1251, 1273–74 (11th Cir. 2003); *see also Daytona Grand, Inc. v. City of Daytona Beach*, 410 F.Supp.2d 1173, 1176 (M.D.Fla.2006); *R.V.S.*, 361 F.3d at 413; *cf. Fantasyland Video, Inc. v. County of San Diego*, 373 F.Supp.2d 1094, 1116–19 (S.D.Cal.2005) (holding that an ordinance requiring pasties and G-strings "plus" did not violate the narrow tailoring requirement of *O'Brien* where the ordinance required covering over the anal cleft or cleavage and not the buttocks). Section 3–129(6) requires a dancer—before she can permissibly engage in certain explicit dance movements—to fully cover her buttocks and the lower portion of her breasts, which requires her to wear more than pasties and a G-string. As the Seventh Circuit has held, "it is still the case that to avoid the Ordinance[,] dancers must not convey an erotic message through their movements (or they must wear significantly more clothing than the amount we have considered to be [a *de minimis* burden] in past cases)." *R.V.S.*, 361 F.3d at 414.

The First Amendment cannot both protect the expressive element of erotic dancing and also restrict and contort it by prohibiting the very movements that contribute to its erotic message. While the public en masse may not approve of such explicit performances, the First Amendment does not turn on generally accepted views of propriety. "[O]ne man's vulgarity is another's lyric." *Cohen v. California*, 403 U.S. 15, 25, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). While the County may properly prohibit overt sex acts as part of a performance, the AEC's simulation provision tramples too heavily on free expression by "interfer[ing] substantially with the dancer's ability to communicate her erotic message." *Schultz*, 228 F.3d at 847. Section 3–129(6), as written, is unconstitutional; it is severed pursuant to section 1–11 of the Orange County Code.

### C. Intentional Touching Provision— Section 3–129(9)

■ Section 3–129(9) makes it a crime for an adult entertainment establishment worker to "[i]ntentionally touch the clothed or unclothed body of any customer at the adult entertainment establishment, at any point below the waist and above the knee of the person" or to "intentionally touch the clothed or unclothed breast of any female person[.]" AEC § 3–129(9). While the First Amendment protects the expressive element contained in erotic dancing, the Court has been unable to find any case law affording that protection to intentional touching between workers and patrons,[19] even if that touching may occur during part of an expressive performance. Indeed, section 3–129(9) is less restrictive than the "no touch" provision upheld in

---

(2) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

**19.** Section 3–129(9) also prohibits intentional touching of the breast of any female person, including that of another dancer. Plaintiff does not focus on this portion of the statute and merely argues that the prohibition on innocent touching between a dancer and patron is unconstitutional. Thus, the Court declines to consider whether an ordinance prohibiting a dancer from touching the clothed or unclothed breast of another dancer violates the First Amendment.

*Hang On,* 65 F.3d at 1253 (prohibiting all physical contact between dancers and customers); *Fantasy Ranch, Inc. v. City of Arlington,* 459 F.3d 546, 556–62 (5th Cir. 2006); and *Krontz v. City of San Diego,* 136 Cal.App.4th 1126, 39 Cal.Rptr.3d 535, 544 (2006). It is also less restrictive than physical buffer and stage height requirements that have been routinely upheld. *Gammoh v. City of La Habra,* 395 F.3d 1114, 1127–28 (9th Cir.2005); *Fantasy Ranch,* 459 F.3d at 555–56; *Deja Vu,* 274 F.3d at 396–98; *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1061 (9th Cir.1986).

In *Hang On,* the Fifth Circuit Court of Appeals held that the Arlington "no touch" provision did not restrict any First Amendment interests of either the dancer or the customer. 65 F.3d at 1253–54. "[I]ntentional contact between a nude [or clothed] dancer and a bar patron is conduct beyond the expressive scope of the dancing itself. The conduct at that point has overwhelmed any expressive strains it may contain. That the physical contact occurs while in the course of protected activity does not bring it within the scope of the First Amendment." *Id.* at 1253. Thus, even if some modicum of First Amendment rights was implicated by the "no touch" provision in *Hang On,* the restriction nevertheless passed the *O'Brien* test for content-neutral regulations. *Id.* at 1254. The same analysis applies here. Section 3–129(9) is facially constitutional.

## IX. The AEC's Suspension and Revocation Provisions

Plaintiff contends that the AEC's suspension and revocation provisions violate the First, Fifth, and Fourteenth Amendments by: (1) allowing the County "to suspend an adult license based upon an alleged violation of the law (without convic-

tion or any court review)"; (2) allowing the County "to suspend or revoke an adult entertainment license based upon the unilateral actions of an individual defendant who enters a plea of no contest," thereby imposing "a form of strict or vicarious liability upon the owner or holder of the adult entertainment license"; (3) failing to "provide any time table by which the [C]ounty ... must initiate and notify the holder of an adult entertainment license that it is seeking to suspend or revoke the license"; (4) allowing the County "to revoke an adult entertainment license based upon the conduct of an 'operator' ... without any specific showing of wrongdoing or culpable conduct on the part of the license holder" and without providing the license holder "reasonable notice or an opportunity ... to remedy the purported criminal conduct"; and (5) shifting "the burden of proof to the owner of the establishment to establish that the conduct or acts which form the basis of the suspension or revocation contain a significant expressive element." (First Am. Compl. ¶¶ 30–38.) [20]

### A. Section 3–35(c)(1)–(3), Suspension Based on Alleged Violations of the Law

██ Plaintiff contends that section 3–35(c)(1)–(3) permits the Tax Collector to suspend an adult entertainment establishment's license based on an "alleged violation of the law [ ]without conviction or court review[ ]" (First Am. Compl. ¶ 30) and on the basis of *respondeat superior.* (Doc. 95 at 12.) More pointedly, Plaintiff argues that its license may be suspended if a worker violates the AEC's criminal provisions or commits other specified criminal acts even if Plaintiff had no knowledge of the criminal conduct and even if Plaintiff is

---

**20.** As already discussed, res judicata precluded Plaintiff's challenge to section 3–37 regarding the procedure and criteria for selecting a

hearing officer when a license holder initiates an administrative challenge to a suspension decision.

not culpably responsible for the worker's actions.

Under the ordinance, the Tax Collector can issue a suspension if the County provides evidence of a worker's violations. A license holder may challenge a suspension decision according to the procedural and substantive safeguards set forth in section 3–37(f), including an administrative hearing and judicial review of the administrative decision.[21] Section 3–37(f) further sets forth the standard of proof required to effect a suspension or revocation. Most importantly, a license holder can continue operations until a final decision is rendered because any suspension or revocation decision is abated pending administrative and judicial review. AEC §§ 3–35(e) & 3–36(f). Section 3–37(f)(7) specifically provides:

> Orange County shall prove by clear and convincing evidence at the hearing that the violations of article V or specified criminal acts occurred at the establishment during the period of time in question, and that the licensee was culpably responsible because the licensee or an operator of the establishment had actual or implied actual knowledge that the violations or acts were being committed, the violations or acts were fostered or condoned by the licensee or an operator,

or that the violations or acts occurred because the licensee or an operator acted recklessly, carelessly, negligently, or with a lack of diligence.

AEC § 3–37(f)(7). Plaintiff contends that "the devil is in the definitions" and that the County's definitions of licensee and operator impute liability to the owner based on the conduct of any worker. Plaintiff reads the definitions too broadly.

The AEC defines licensee as "any person whose application for an adult entertainment establishment has been granted and who owns, operates, or controls the establishment." AEC § 3–6. An operator is "any worker or other person who has the authority to direct or otherwise control workers at, or the operation of, an adult entertainment establishment, including but not necessarily limited to the licensee, owner, manager, assistant manager, supervisor, or assistant supervisor." *Id.* Plaintiff's license is not vulnerable to the actions of "any worker" as Plaintiff asserts.[22] Only the acts of those people who have the authority and responsibility to supervise and control workers at the establishment can be imputed to the license holder, and even those acts will be imputed only *if* the licensee was culpably responsible, meaning the licensee has knowledge of the viola-

---

**21.** Plaintiff does not take issue with the fact that the procedural safeguards of section 3–37(f) arise only upon challenging an issued suspension before a hearing officer. Rather, Plaintiff merely argues that the culpability threshold in place is deficient. Thus, the Court does not consider whether the fact that these safeguards are provided only when a license holder opts to challenge a suspension renders the suspension provisions constitutionally infirm.

**22.** These definitions are limited to Plaintiff's upper echelon employees, or management, in stark contrast to the problematic definitions and vicarious liability provisions enjoined in *Blue Moon Enterprises v. Pinellas County Department of Consumer Protection,* 97

F.Supp.2d 1134, 1145–46 (M.D.Fla.2000). "Employee" and "operator" were defined broadly enough to encompass every person who performed any work at the establishment, provided the person had a "substantial or consistent relationship with the business." *Id.* at 1146. Thus, criminal liability in *Blue Moon* was not limited to those who bore "a responsible relation to the prohibited conduct ... [and who may have had the] authority or power to prevent such activity." *Id.* Under the County's AEC, license suspension is confined to management-like personnel who, in essence, allow employees to violate the law when they have the authority, power, and responsibility to prevent criminal violations in the establishment.

tions being committed, condones the violations, or is reckless, careless, negligent, or lacking diligence in allowing the violations to occur. By its plain meaning, this provision is not intended to subject a licensee to liability based simply on the actions of its dancers, absent some degree of knowledge or wrongdoing on the part of those persons who bear responsibility for and authority over the employees.

Plaintiff's contention as to section 3–35(c)(1)–(3) is without merit; the provision neither denies Plaintiff due process of law, nor does it constitute an impermissible prior restraint. The provision is designed to punish wrongdoing, not to stifle protected expression. *See* AEC § 3–37(f)(8).

### B. Sections 3–35 and 3–36. The Definition of Conviction

Plaintiff also claims that the definition of "conviction," in AEC § 3–6, as used in sections 3–35 and 3–36, is unconstitutional because it allows the County to suspend an adult entertainment license if a worker-defendant enters a plea of no contest on charges of AEC criminal violations or charges of specified criminal acts. Plaintiff also submits that suspension can occur if a worker fails to appear and has his or her bond forfeited when charged with certain crimes.

The AEC defines "conviction" or "convicted" as:

the finding of guilt or the entry of a plea of guilt or *nolo contendere* for a violation of a municipal or county ordinance or state or federal law, regardless of whether adjudication is withheld, or the forfeiture of a bond or bail when charged with a violation of a municipal or county ordinance, or state or federal law.

AEC § 3–6. The procedural safeguards contained in section 3–37(f), as outlined above, also render Plaintiff's argument regarding the definition of "conviction" mer-itless. Provided that a license holder challenges a suspension decision and requests an administrative hearing, the suspension will not rest on an alleged violation of law or upon the unilateral actions of an individual defendant, as Plaintiff contends. Section 3–37(f)(7) requires the County to prove by clear and convincing evidence that the violations occurred and that the licensee was culpably responsible for the acts. Thus, even if a suspension may be premised on workers pleading no contest, if the license holder challenges the suspension, the violation must still be proved by clear and convincing evidence—the standard of proof required to suspend or revoke a business license based on alleged criminal violations. *See Pic N' Save Cent. Fla., Inc. v. Dep't of Bus. Reg.,* 601 So.2d 245, 249–50 (Fla. 1st DCA 1992). The law does not require criminal adjudication before a County can suspend a business license due to criminal activity. *Id.* ("It is now settled in Florida that a business license, whether held by an individual or a corporate entity, is subject to suspension or revocation only upon proof by *clear and convincing evidence* of the alleged violations."); *Ferris v. Turlington,* 510 So.2d 292 (Fla.1987) (holding that after a teacher's plea of nolo contendere to sexual battery, the administrative revocation of his license must be based on clear and convincing evidence); *see also New Palm Gardens, Inc. v. Alcoholic Beverages Control Comm'n,* 11 Mass.App.Ct. 785, 420 N.E.2d 8, 12–13 (1981) ("[T]he commission can properly determine whether a licensee has violated [the law] for purposes of license suspension ... regardless of the existence or outcome of any criminal proceedings."). Plaintiff's argument that the County maintains "unbridled discretion" to suspend or revoke its license based on mere allegations is unpersuasive.

### C. Section 3–35(c)(1)–(3), Timetable

 Plaintiff argues that § 3–35(c)(1)–(3), the license suspension provision, is unconstitutional because it lacks a time period in which the Tax Collector must proceed against a license based on a conviction or violation of the criminal provisions in the Code.[23] Thus, Plaintiff argues that the lack of a time restraint "allows the county to exercise arbitrary or uncontrolled discretion in determining how and when a license will be suspended or revoked." (Doc. 95 at 17.) Plaintiff sets forth the traditional "statute of limitations"-type arguments, including the unavailability of witnesses and the prejudice involved in defending against a delayed suit, but Plaintiff also argues that the lack of a time restraint allows the County to manipulate the process and "stack a suspension or revocation" proceeding against the license holder. (First Am. Compl. ¶ 32; Doc. 95 at 17.)

The lack of a time limit in which the County, in conjunction with the tax collector, must suspend a license based on certain convictions or violations of the law does not render the provision an unconstitutional prior restraint. "The lack of time limits on revocation [or suspension] in [the ordinance] is not of substantial concern in a prior restraint analysis because no speech is chilled prior to the time that the permit is actually revoked." *United Youth Careers, Inc. v. City of Ames*, 412 F.Supp.2d 994, 1006 (S.D.Iowa 2006) (citing *Jake's Ltd., Inc. v. City of Coates*, 284 F.3d 884, 890 (8th Cir.2002)). The law

"makes a firm distinction between prior restraints and subsequent punishments." *Id.* (citing *Alexander v. United States*, 509 U.S. 544, 553–54, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)). "Thus, if it takes two days before revocation or two years, no speech has been unduly impinged by the lack of time restraints on revoking a permit issued under the ordinance." *Id.* The ordinance allows notice to the license holder, timely challenge in front of a hearing officer, and timely appeal and judicial review. *See id.*; AEC § 3–37. During such time, the suspension is abated and the license holder can continue operating. The provision is not facially infirm.

### D. Section 3–36(c), Revocation Based on an Operator's Convictions or Violations

 Plaintiff also challenges section 3–36(c), which allows license revocation upon an operator's commission of three or more specified criminal acts at the adult entertainment establishment within a period of two years. AEC § 3–36(c). Specified criminal acts generally include the following crimes contained in the Florida statutes: sexual battery, prostitution, lewdness, indecent exposure, obscenity, a felony related to controlled substances, racketeering, or money laundering. *Id.* § 3–6. Plaintiff submits that this provision is unconstitutional for lacking procedural safeguards, argument on which has already been rejected above, but Plaintiff further urges that the provision is suspect because it does not provide the licensee

---

23. Specifically, Plaintiff contends that the suspension provision violates the First Amendment and constitutes a denial of due process. Plaintiff cites no authority in support of its position and fails to identify a theory under which § 3–35(c)(1)–(3) violates the First Amendment. The Court declines to consider the due process challenge in the abstract, though the Court notes that the ordinance permits the license holder to challenge the

Tax Collector's decision in front of a hearing officer and permits further judicial review of the hearing officer's decision. AEC § 3–37(f). Moreover, the licensee may continue operating until such time as a final decision has been rendered. As for Plaintiff's First Amendment challenge, the Court can only presume that a prior restraint challenge is intended implicitly.

the opportunity to remedy the violation before revocation and because revocation terminates any non-conforming zoning use status enjoyed by the location.

Plaintiff cites no authority supporting its suggestion that a suspension must always precede a revocation decision or that a revocation necessarily requires proof of an escalating pattern of misconduct. Moreover, the requirement that the County prove the licensee was culpably responsible for the operator's violations necessitates a finding that the licensee had an opportunity to remedy the violations. *See* AEC § 3–37(f)(7). Revocation on these grounds is indeed a strong remedy for serious misconduct by an establishment's management of which the licensee was either aware or of which it recklessly disregarded, but it is not unconstitutional simply because the revocation provision does not follow the same escalation pattern as the suspension provision.

The effect of the revocation, while grave, does not constitute an impermissible prior restraint because the AEC's revocation provision is a punishment for past wrongdoing; it is not a permanent restraint of future expression. *See Alexander,* 509 U.S. at 553–54, 113 S.Ct. 2766 ("[O]ur decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments."). The licensee can seek a new license upon expiration of a year's time for the same location, and nothing in the AEC appears to prohibit the licensee from seeking another license for a new location. *See Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 705–06, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986) [24] ("The severity of this burden [on First Amendment protected activities] is dubious at best, and

is mitigated by the fact that respondents remain free to sell the same materials at another location."). The termination of an establishment's non-conforming use zoning permit upon revocation is also unrelated to the exercise of free speech; the licensee is free to re-petition the board of zoning to reestablish its non-conforming use permit. *See id.* Section 3–36(c) is constitutional.

### E. Shifting the Burden of Proof

■ Finally, Plaintiff argues that section 3–37(f)(8) of the AEC impermissibly shifts the burden of proof to the licensee to show that the dancing contains a "significant expressive element" during license suspension and revocation proceedings. In support of this contention, Plaintiff cites *BSA, Inc. v. King County,* 804 F.2d 1104, 1110 (9th Cir.1986), and *Riley v. National Federation of the Blind of North Carolina,* 487 U.S. 781, 793–95, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); however, both are inapposite.

In *BSA,* the Ninth Circuit held that a nude-dancing obscenity ordinance was unconstitutional because it "impermissibly shift[ed] to the defendant the burden of proving the activity did not appeal to prurient interests, and, therefore, is protected expression." 804 F.2d at 1110. There, however, the violation of the ordinance imposed criminal liability and the burden shifting would have removed the prosecution's onus to prove all of the elements of an offense—obscenity—beyond a reasonable doubt. *Id.* The burden-shifting provision that Plaintiff challenges is not one that imposes criminal liability, and *BSA* is not persuasive.

24. Plaintiff dismisses the County's reliance on *Arcara,* arguing that *Arcara* merely "stands for the proposition that the First Amendment is not offended simply because a license is revoked—but it does not address the issues

presented here, specifically procedural safeguards." (Doc. 95 at 13.) Plaintiff's desired procedural safeguards can be found in sections 3–37(f) and 3–38 of the AEC.

*Riley* involved a First Amendment challenge to the North Carolina Charitable Solicitations Act, which required, among other things, that professional fundraisers only charge a "reasonable fee"—defined as a percentage of revenues collected—but allowed a fundraiser to rebut the presumption of unreasonableness. 487 U.S. at 793, 108 S.Ct. 2667. Holding that the restriction on a fee contract between a fundraiser and a charity was unconstitutional, the Court acknowledged the chilling effect that would result if a fundraiser knew that charging fees in excess of the percentage would expose her to litigation wherein she would have to defend her fee, and "bear the costs ... and the risk of a mistaken adverse finding by the factfinder, even if the fundraiser and the charity believe that the fee was in fact fair." *Id.* at 794, 108 S.Ct. 2667. The rebuttable presumption that shifted the burden in that case was North Carolina's attempt to salvage what would clearly be an unconstitutional ordinance. While the Court emphasized the inequity that would result from requiring a fundraiser to have to litigate every fee exceeding the statute's thresholds, the statute was not held unconstitutional because of that provision; the statute was unconstitutional with or without the burden-shifting provision.

Although *BSA* and *Riley* are not helpful in this analysis, there is United States Supreme Court precedent which bears directly on this issue. Although the Supreme Court has held that "the burden of proving that [a] film is unprotected expression must rest on the censor," *Freedman v. Maryland*, 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Court later held that burden-shifting is permissible in the licensing context "[b]ecause the license is the key to the applicant's obtaining and maintaining a business, [and therefore,] there is every incentive for the applicant to pursue a license denial through court," *FW/PBS, Inc. v. City of Dallas*, 493 U.S.

215, 229–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The *Freedman* Court had expressed concern that a speaker or exhibitor—in a prior restraint, censorship context—be protected to the fullest extent possible, and thus, it mandated three procedural safeguards that are constitutionally required under a censorship scheme, including the requirement that the censor bear the burden of proof. *Freedman*, 380 U.S. at 57–59, 85 S.Ct. 734.

In the licensing context, these concerns are mitigated, and therefore the requirement that the censor bear the burden of proof does not apply. *FW/PBS*, 493 U.S. at 227–28, 110 S.Ct. 596; *Redner v. Dean*, 29 F.3d 1495, 1500 (11th Cir.1994). The County relies on *Ward v. County of Orange*, 217 F.3d 1350 (11th Cir.2000), *aff'g in part*, 55 F.Supp.2d 1325 (M.D.Fla. 1999), which applied the censorship/licensing distinction articulated in *FW/PBS*. In *Ward*, the Eleventh Circuit Court of Appeals affirmed the constitutionality of another affirmative defense in Orange County's AEC even though it required the licensee to prove it did not operate an "adult performance establishment" upon the County's suggestion that the business required an adult establishment license. 217 F.3d at 1354–55, 55 F.Supp.2d at 1334; *see also Fla. Video Xpress, Inc. v. Orange County*, 983 F.Supp. 1091, 1098 (M.D.Fla.1997) (upholding the same burden-shifting provision in the licensing context). "[A] city may require the license applicant to bear the burden of proving that it is engaging in protected activity." *Ward*, 217 F.3d at 1355. Section 3–37(f)(8) of the AEC is constitutional.

### X. Conclusion

For the foregoing reasons, Plaintiff's challenges to the licensing provisions of the AEC are denied. The intentional touching prohibition is a constitutional re-

striction on physical contact between performers and patrons. The fondling and simulated sexual activity proscriptions are unconstitutional restrictions on a dancer's First Amendment expression.

Accordingly, it is **ORDERED** that Defendant's Request for Judicial Notice (Doc. 104) is **GRANTED.** Additionally, Defendant's Dispositive Motion for Summary Judgment (Doc. 53) is **GRANTED in part** and **DENIED in part.** Plaintiff's Cross–Motion for Summary Judgment (Doc. 95) is **GRANTED in part** as set forth herein. Section 3–129(3) in conjunction with the third definition of SSA contained in section 3–6 and section 3–129(6) are declared unconstitutional, and Defendant Orange County is permanently enjoined from enforcing these sections. To the extent not granted herein, Plaintiff's motion is **DENIED.**

The Clerk is directed to enter judgment in favor of Plaintiff directing that Defendant Orange County is enjoined from enforcing section 3–129(3) in conjunction with the third definition of specified sexual activity found in section 3–6 of the Adult Entertainment Code. The County is further enjoined from enforcing section 3–129(6). Thereafter, the Clerk shall close this file.

## ORDER ON MOTION FOR CLARIFICATION

This cause is before the Court on Plaintiff's Motion for Clarification (Doc. 137) of this Court's Amended Order (Doc. 136). Plaintiff asks the Court to expressly state that it "declines to consider or conclude whether a third party property owner which leases/rents its property to an adult entertainment business owner (the 'licensee') could be factually or constitutionally responsible for the actions of its tenant/

'licensee.'" (Doc. 137 at 2.) The Motion for Clarification (Doc. 137) is **DENIED.**